1  BRIAN C. LEIGHTON, CA BAR # 090907
   Law Offices of Brian C. Leighton
2  701 Pollasky Avenue
   Clovis, California 93612
3  Telephone:(559) 297-6190
   Facsimile:(559) 297-6194
4  E-mail: kbarker@arrival.net

5  Attorney for Plaintiff NEIL O'BRIEN

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **EASTERN DISTRICT OF CALIFORNIA**

10

11 NEIL O'BRIEN, an individual,        )    CASE NO. 1:12-CV-02017-AWI-SAB
                                        )
12            Plaintiff,                )
                                        )    **FIRST AMENDED COMPLAINT FOR**
13       v.                             )    **VIOLATION OF CIVIL RIGHTS AND**
                                        )    **CONSPIRACY TO VIOLATE AGAINST**
14 DR. JOHN D. WELTY, in his personal   )    **ALL DEFENDANTS (42 U.S.C. § 1983);**
   capacity; DR. PAUL M. OLIARO, in his )    **FREE SPEECH, DUE PROCESS, EQUAL**
15 personal capacity; DR. CAROLYN V.    )    **PROTECTION, RETALIATION,**
   COON, in her personal capacity;      )    **DISCRIMINATION; COMPENSATORY**
16 DR. VICTOR M. TORRES, in his personal)    **AND PUNITIVE DAMAGES; ATTORNEYS'**
   capacity; DR. MARIA A. LOPES, in her )    **FEES; DECLARATORY AND**
17 personal capacity; DR. LUZ GONZALEZ, )    **EQUITABLE RELIEF; JURY TRIAL**
   in her personal capacity; DR. MATTHEW)
18 JENDIAN, in his personal capacity, and)
   DOES 1 through 25, inclusive,        )
19                                       )
                    Defendants.          )
20  _____ )

21        Plaintiff, Neil O'Brien, hereby complains against Defendants DR. JOHN D. WELTY,  DR.

22 PAUL M. OLIARO, DR. CAROLYN V. COON, DR. VICTOR M. TORRES, DR. MARIA A. LOPES,

23 DR. LUZ GONZALEZ, and DR. MATTHEW JENDIAN, and DOES 1 through 25, inclusive all in their

24 personal capacities, for violation of Plaintiff's civil rights, conspiracy to violate Plaintiff's civil rights,

25 compensatory and punitive damages, attorneys' fees, and other declaratory and equitable relief.

26

27                                        1

28  FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
       AND CONSPIRACY TO VIOLATE  AGAINST ALL
       DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,
       EQUAL PROTECTION, RETALIATION, DISCRIMINATION;
       COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'
       FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL

# I.

## PARTIES

1.     At all relevant times, Plaintiff is and was an adult male student attending California State University Fresno, a.k.a. Fresno State, and hereinafter referred to as "Fresno State."

2.     At all relevant times, Defendant Dr. John D. Welty, sued herein in his personal capacity, was and is the President of Fresno State.

3.     At all relevant times, Defendant Dr. Paul M. Oliaro (a.k.a. Dr. "O"), sued herein in his personal capacity, is and was, upon information and belief, the Dean of Students at Fresno State, and the Vice President for the Division of Student Affairs.

4.     At all relevant times, Defendant Dr. Carolyn V. Coon, sued herein in her personal capacity, is and was the Assistant Dean of Student Affairs and/or the Assistant Vice President and Dean of Students and interim Director of Judicial Affairs, and with respect to all relevant times alleged herein was designated as the Student Conduct Administrator.

5.     At all relevant times, Defendant Dr. Victor M. Torres, sued herein in his personal capacity, was and is a Professor at Fresno State in the Chicano and Latino American Studies Department (hereinafter, the "CLS"), also was the Student Advisor for those who major in that Department, and the Department Chair to the CLS, and also was and is the Faculty Advisor to the Fresno State student-funded "La Voz De Aztlan," an "Ethnic Supplement" to the Fresno State student news paper called the "The Collegian."

6.     At all relevant times, Defendant Dr. Maria A. Lopes, sued herein in her personal capacity was and is a Professor in the CLS Department at Fresno State, and also an Assistant Student Advisor in that Department.

7.     At all relevant times, Defendant Dr. Luz Gonzalez, sued herein in her personal capacity, was and is the Dean of the Social Sciences Department at Fresno State, which includes the CLS

2

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
AND CONSPIRACY TO VIOLATE  AGAINST ALL
DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,
EQUAL PROTECTION, RETALIATION, DISCRIMINATION;
COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'
FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL

1   Department and the Sociology Department, and the Coordinator of the Chicano and Latino

2   Commencement Ceremony graduations.

3       8.      At all relevant times, Defendant Dr. Matthew Jendian, sued herein in his personal

4   capacity, was and is an Associate Professor/Lecturer in the Department of Sociology, and the

5   Department Chair of the Sociology Department.

6       9.      Plaintiff is ignorant of the true names and capacities of the Defendants sued herein in

7   their personal capacity, DOES 1 through 25, inclusive, and therefore sues said Defendants by such

8   fictitious names.   Plaintiff further alleges that said DOE Defendants worked in the capacity as

9   administrators, faculty or law enforcement officers at Fresno State, and they are sued herein in their

10  personal capacity.  Plaintiff is informed and believes and thereon alleges that each of said fictitiously

11  named Defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's

12  injuries as herein alleged were proximately caused by said Defendants.

13      10.     Plaintiff is informed and believes, and thereon alleges, that all times herein mentioned,

14  each of the Defendants were acting in unison, and in concert, in order to intimidate, harass, silence,

15  browbeat, coerce, and make student life at Fresno State miserable, intolerable, hostile and difficult for

16  the Plaintiff, all in punishment and retaliation for Plaintiff exercising his free speech and expression

17  rights, pursuing his higher education and conduct protected by the Free Speech Clause of the United

18  States Constitution; because Plaintiff is, and at all times was, an active constitutional conservative, has

19  and had constitutional conservative values, and, in a non threatening or violent manner, expressed those

20  views in print form, his website, in emails, in person and in Fresno State public meetings to object and

21  respond to the radical left-leaning policies, anti-western programs, clubs and overall cultural Marxism

22  at much of Fresno State Campus, and more specifically in and around the Social Science Department

23  and leading Administrators.  These are and were many of the things with which Plaintiff did not agree,

24  and expressed the same on campus, to faculty and administrators and student body meetings and on his

25  web page.

26

27                                      3

28  **FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
    AND CONSPIRACY TO VIOLATE  AGAINST ALL
    DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,
    EQUAL PROTECTION, RETALIATION, DISCRIMINATION;
    COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'
    FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL**

11.    Each of the Defendants named above were, at all relevant times, acting under color of state law, conspired amongst each other and in support of each other, all with the purpose of silencing, intimidating, and discriminating against Plaintiff, and creating a hostile environment for Plaintiff, specifically because of his outspoken constitutionally conservative-held and adhered points of view and his challenges to those liberal Fresno State policies.   Those with liberal ideas, voices and communications, including radical leftist views, were embraced, welcomed, promoted and applauded by the Defendants.  Instead of welcoming opposing points of view such as those held by Plaintiff, and engaging in open debate about them, as required by: (1) the Constitution; (2) Fresno State's own expressly written and disseminated "Academic Policy Manual"; (3) principles of higher "education"; and (4) the California Constitution, Defendants became and were, at all times mentioned in this Complaint, leftist-leaning leaders and facilitators of radical leftist/progressive indoctrination, propaganda and culture, totally intolerant of the opposite points of view – especially those of the outspoken students, such as the Plaintiff.

12.    Defendants knew, and should have known that their conduct, writings and/or demonstrated and expressed behavior, threats and punishment were intended to: (1) silence, defame, discriminate against, vilify, browbeat and to coerce Plaintiff's silence; (2) to retaliate against, punish and intimidate Plaintiff; (3) create a hostile campus environment; (4) and to deny Plaintiff's due process rights, equal protection rights, free speech rights and rights to petition for the redress of his grievances; (5) and otherwise make Plaintiff's student life at Fresno State very hostile, intolerable and unwelcomed. Defendants knew or should have known that they were violating Plaintiff's constitutional rights, and the actions they took were intended to violate Plaintiff's rights stated herein, and to injure, harm, embarrass, muzzle, intimidate, discriminate and retaliate against Plaintiff for exercising his First Amendment rights. The Defendants' actions, writings and communications regarding Plaintiff, were oppressive, malicious, discriminatory and intended to silence, defame, vilify, punish, discriminate and significantly harm Plaintiff in his exercise of those rights and his education.  Thus, the Defendants knew or should have

4

**FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS**
**AND CONSPIRACY TO VIOLATE  AGAINST ALL**
**DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,**
**EQUAL PROTECTION, RETALIATION, DISCRIMINATION;**
**COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'**
**FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL**

1  known that their actions, conduct and writings did, and would, violate Plaintiff's Civil Rights protected

2  by 42 U.S.C. § 1983 *et seq.*  The Defendants, and each of them conspired together and with each other

3  to violate Plaintiff's civil rights beginning in the Fall of 2010 and continuing through the time of the

4  filing of this complaint, and Defendants committed various overt acts in furtherance of the conspiracy

5  as described below.  All of the actions taken by the Defendants complained of herein were done under

6  color of state law.

7                                                **II.**

8  _____**JURISDICTION AND VENUE**_____

9          13.     This Court is the proper place of venue because all actions and activities mentioned

10  herein occurred in, or about, or relating to California State University Fresno, a.k.a. Fresno State, in the

11  State and Eastern District of California.  Further, Plaintiff resides in the County of Fresno, and upon

12  information and belief, all of the Defendants, at all relevant times mentioned herein were inhabitants of

13  the County of Fresno, and the conduct and actions taken by the Defendants all occurred in Fresno

14  County, State and Eastern District of California.  All of the causes of action herein arise under the U.S.

15  Constitution and the laws of the United States pursuant to 42 U.S.C. § 1983 *et seq.*, and therefore this

16  Court has original jurisdiction under 28 U.S.C. § 1331.

17                                               **III.**

18                      **STATEMENT OF FACTS RELEVANT TO ALL**
                        **CAUSES OF ACTION AND PRAYERS FOR RELIEF**

19  _____

20          14.     Plaintiff incorporates herein the allegations contained in paragraphs 1 through 13 above,

21  as though fully set forth.

22          15.     Plaintiff enrolled in Fresno State beginning the Fall Semester of 2010.  He had previously

23  passed approximately 79 units in combination at California State University, Long Beach, Fresno City

24  College and Advanced Placement (AP) credits acquired during his high school years.  Thus, Plaintiff's

25  first semester at Fresno State would constitute his junior year.  He chose Fresno State because he had

26

27                                                5

28  **FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS**
    **AND CONSPIRACY TO VIOLATE  AGAINST ALL**
    **DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,**
    **EQUAL PROTECTION, RETALIATION, DISCRIMINATION;**
    **COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'**
    **FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL**

already begun working on a degree in recreation, and Fresno State had a Recreation Department for such majors.  Plaintiff, at that time, wished to become a park ranger, and greatly enjoyed working outside.  Plaintiff later added economics to his degree plan.  At the time Plaintiff  was twenty-seven (27) years old, very Caucasian-looking, with a father of Argentinian and Irish descent, and a mother of Argentinian and Spanish descent. Plaintiff's parents lawfully immigrated to the United States from Buenos Aires, Argentina.  Plaintiff was born in the United States and is a patriotic proud U.S. citizen.  Plaintiff also speaks fluent Spanish and English.

16.     Shortly after arriving at Fresno State, he learned that most faculty members in the Social Science Department, especially the CLS Department, and other closely associated Departments were politically left-leaning.  The Defendants were, by their actions, words, conduct, and course instruction, very left-leaning liberals and/or progressives, who were not only intolerant of those who were outspoken conservatives, but were demonstrably hostile to them, and as such were specifically intent on silencing Plaintiff.    Philosophically, Plaintiff realized that his constitutionally conservative beliefs were completely at odds with the views held by most leftist progressives on campus.  Plaintiff, nevertheless believed that the college environment should be tolerant and respectful of all points of view.  However, such is not the case at Fresno State.  Its overall motive – especially in the Social Science Department – is to indoctrinate liberal and anti-capitalism, and Marxism.  As soon as Plaintiff began expressing his conservative perspectives, he was punished, reviled and retaliated against by CLS and Sociology department faculty, and administrators, including all of the Defendants, who encouraged their students to exhibit similar behaviors toward Plaintiff.

17.     After enrolling at Fresno State, Plaintiff became aware that many students were also radically left-leaning Marxists who demonstrated hateful anti-American sentiments and anti-capitalist views and were loud in their contempt for those, like Plaintiff, who disagreed.  There were also various left-leaning and radical groups on the Fresno State Campus – who took classes and/or majored in

6

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
AND CONSPIRACY TO VIOLATE  AGAINST ALL
DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,
EQUAL PROTECTION, RETALIATION, DISCRIMINATION;
COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'
FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL

programs offered by the college of Social Science, specifically the CLS Department.  It became obvious that those who were the most vocal and radical were embraced and supported by the Defendants.

18.     While Plaintiff vehemently disagreed with the points of view of these students, and the professors, associate professors, faculty and administrators that subscribed to the same, he also understood that the Free Speech Clause of the U.S. Constitution gave them every right to express such points of view – but the Defendants did not have the constitutional authority to launch a campaign to intimidate, silence, punish and discriminate against Plaintiff for expressing his contrary view.

19.     Plaintiff quickly learned that said left-leaning groups and these left-leaning professors, administrators and faculty members, and each of the Defendants were totally intolerant of Plaintiff's contrary point of view and Plaintiff was subject to much abuse, derision and retaliation from faculty, administrators and students – including each of the Defendants – because of Plaintiff's political, and philosophical points of view and his expression of the same.  The named Defendants were at the forefront of such retaliatory and intolerant abuse, and Defendants Drs. Welty, Oliaro and Coon, and other DOE Defendants determined to and inflicted the punishment imposed upon Plaintiff.   The other Defendants caused, fomented and urged Defendants Welty, Oliaro and Coon to impose such punishment and abuse.  Some of the Fresno State Police Department Officers and officials would respond to faculty and administrator complaints about Plaintiff, including those from the Defendants, with harassment against Plaintiff, out of fear of the reprisals by the Fresno State administrators, if they did not take "tough" action against the Plaintiff.  In all of Plaintiff's expression of disagreement with, and objection to, the Defendants' words, actions and conduct, Plaintiff was never threatening or intimidating, nor gave any real reason for such responsive conduct by Defendants, police officers or campus officials.

20.     As time progressed, Plaintiff learned that there were others on campus who agreed with his points of view.  However, they were fearful of speaking out because the left-leaning groups of students, faculty and administrators were so intolerant of anyone who held conservative, pro-western, and pro-capitalistic points of view.  It was clearly evident that Defendants, and many other faculty

7

members were practicing and instructing on leftist-indoctrination and propaganda in the classroom, seminars, and campus functions, and disguised it as "diversity."  These Defendants were inspired and supported by Defendants Welty and Oliaro, and used Defendant Coon to mete out punishment to outspoken conservatives like Plaintiff and to also send a message to other like-minded conservatives, in order to silence them.  Because Plaintiff was so outspoken (but not hostile or intimidating) about his beliefs, he became the primary target of these left-leaning organizations, students, faculty and administrators, the Defendants, and especially the faculty members in the College of Social Sciences including the CLS and Sociology Departments.  It became apparent that by silencing Plaintiff, they could intimidate and coerce other like-minded students forcing them into silence and submission to the political and social left-leaning liberal beliefs and indoctrination of the university and Defendants.  The Defendants were largely successful in silencing these like-minded students, but because Plaintiff would not be silenced, he was punished as stated above, and alleged below.  Through their actions, emails, meetings, and conduct, Defendants incited each other and other faculty and students to retaliate against Plaintiff.  While incurring the considerable wrath and retaliation and discrimination of the Defendants, administrators, and faculty – especially in the College of Social Science, and other places were those students and Defendants gathered – Plaintiff nevertheless participated in, and organized events for the Central Valley Tea Party chapters.  In addition, Plaintiff formed a chapter on the Fresno State Campus of a nationally recognized student organization named "Young Americans for Liberty," a liberty-minded conservative group.  Plaintiff also attended almost all the student government (ASI) meetings during 2010-2011, and 2011-2012 academic years, and requested information from Fresno State through the California Public Records Act, as further described below, which caused more animosity against Plaintiff by the Defendants and left-leaning students.  Not only was Plaintiff enrolled at Fresno State to earn a degree in recreation but also to "learn" by getting involved in student and political activities, debate and otherwise pursue his "higher education" before entering into the "work" and "occupation" world.

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
AND CONSPIRACY TO VIOLATE  AGAINST ALL
DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,
EQUAL PROTECTION, RETALIATION, DISCRIMINATION;
COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'
FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL

21.     Very clear, specific and important provisions of Fresno State's own Academic Policy Manual ("APM"), described below, were routinely ignored and violated by Defendants as said "Policy Manual," in pertinent part, states: (A.)  Faculty members are required to "promote and protect academic freedom, promote respect for the learning process, and enhance public recognition of the unique role of educational institutions in our society" and that "public higher education is a public service and a public trust;" (B.)  That Fresno State "shall support the pursuit of excellence and academic freedom in teaching, research, and learning through the free exchange of ideas among faculty, students and staff;" (C.)  That "quality education requires an atmosphere of academic freedom and academic responsibility;" (D.) "Faculty members have the obligation to establish and maintain ethical professional conduct in and outside of the classroom that reflect and enhance the meaning of academic freedom;"  (E.)  "Practice, foster, and defend intellectual honesty, freedom of inquiry and instruction, and free expression on and off campus, not only for themselves, but also for all members of the academic community;" (F.)  "Avoid any personal or professional conflict of interest which would compromise the exercise of intellectual honesty, freedom of inquiry of instruction, or freedom of expression on or off campus by themselfs or others;" (G.)  "Create an atmosphere of mutual respect, in and out of the classroom, between faculty and students by showing due consideration for the reasoned opinions of students;" (H.)  "Fresno State faculty are to treat all students fairly and consistently to avoid any appearance of special favors for special groups;" (I.)  And with respect to political activities, faculty and administrators should engage in "no political activities" on state time; (J.)  That state and university employees in the "conduct of official business should remain neutral towards candidates or ballot measures" and that the "use of state resources to promote a political organization and/or a candidate, advocate on behalf of a ballot measure, or to solicit political contributions is prohibited" with "resources" being "broadly defined to include staff, office space, facilities, all forms of campus mail, equipment, supplies, stationary or forms." Also, California Education Code § 66301 absolutely prohibits administrators of California universities, including Fresno State, from making or enforcing any rule subjecting any student to disciplinary action

9

**FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
AND CONSPIRACY TO VIOLATE  AGAINST ALL
DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,
EQUAL PROTECTION, RETALIATION, DISCRIMINATION;
COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'
FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL**

for any conduct, speech or other communication, that when engaged in outside a campus, is protected by the First Amendment of the United States Constitution and the Free Speech Clause of the California Constitution.  The Fresno State Campus is dedicated as a public forum and dedicated to free assembly and debate.  Defendants' conduct described herein violated each and every one of these principles and rules as outlined in the APM and said education code section, and in violation of Plaintiff's free speech and free expression rights, his freedom of association rights, his freedom to petition for redress of grievances, his political activities, denied equal protection and due process in violation of the U.S. Constitution and whereby Plaintiff suffered decidedly substantial discrimination and retribution solely on account of Plaintiff exercising said constitutional rights and in his pursuit of higher education at Fresno State.  Defendants Welty and Oliaro either participated directly in the conduct alleged below, and/or they acquiesced in it, approved it, had the ability to stop and prevent it, and the authority to correct it, and knowingly and intentionally did not.  The disciplinary rules and procedures were crafted and implemented by Defendant Welty and overseen by Defendant Oliaro.

22.    The hostility against Plaintiff by the Defendants, and the radical-left and left-leaning students began with Plaintiff voicing his disapproval to the new Student Body President, Pedro Ramirez. Before Plaintiff enrolled at Fresno State for the Fall Semester of 2010, Ramirez had been elected Student Body President at Fresno State for that Fall term, and after Plaintiff's arrival on campus, it was discovered that Ramirez was illegally in this country, and that he did not disclose this fact as he campaigned for and was elected Student Body President, but then proudly proclaimed it, and used it for his "self-aggrandizement" purposes and the University's promotion – fostered and fomented by Defendant Welty and the other Defendants.  After the revelation that Ramirez was an illegal alien, Defendant President Welty issued his own statement and press release endorsing and extolling Ramirez because the DREAM ACT was becoming a nationally discussed political issue that the University, and its administration, supported, in violation of the APM and the California Government Code barring such political lobbying.  Defendants Welty and Oliaro also used university resources, including paid office

10

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
AND CONSPIRACY TO VIOLATE  AGAINST ALL
DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,
EQUAL PROTECTION, RETALIATION, DISCRIMINATION;
COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'
FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL

staff during business hours to write letters to politicians and elected officials to lobby in order to encourage passage of the "DREAM ACT."  Defendant Welty's and Oliaro's endorsement of Ramirez, including their lobbying efforts, enabled Ramirez to become the University's "poster child" in order to drum up support for the "DREAM ACT" which would have granted illegal aliens amnesty in the United States – a political position with which Plaintiff did not agree.  Early on, Defendants clearly knew of Plaintiff's opposition to the Ramirez presidency and the "DREAM ACT."  This prompted Plaintiff to launch a website (www.therealpedro.com) in order to investigate the university and Ramirez' (lies or, false statements), and expose the current leftist bias of the university.  Plaintiff first discovered Ramirez's "Myspace" page, a social networking site describing Americans as "a\*\*holes" and stated that the Mexican race was "the" greats[sic] race in the universe" and that he "lived in California which was part of Mexico."  Plaintiff conducted an IRS record search which revealed that Ramirez had established what Plaintiff believed to be an illegal 527 Political Action Committee by filing an IRS Form 8871 with the aid of Fresno State called "CSU Fresno College Democrats", and Plaintiff posted that on his website.  Plaintiff also conducted a Tulare County records search and learned, and then posted on his website that Ramirez, was a registered voter, which completely was illegal.  Plaintiff also discovered other facts about Ramirez and revealed them on his website.  Plaintiff further reported Ramirez was a member of MEChA and associated with the Brown Berets, Students for Quality Education (SQE), all of which were and are very radical left-leaning Chicano/Latino organizations.  Plaintiff also published activities of his and additional facts about Fresno State officials and Defendants.  Plaintiff's website was available for everyone's public viewing.  Plaintiff's website originally focused on Pedro Ramirez' believed-to-be illegal status and conduct and later took Fresno State Administrators to task, including Defendant Welty, for endorsing him and the DREAM ACT.  Plaintiff also learned, and then disclosed on his website that, Ramirez was driving illegally, an allegation Ramirez denied until he was involved in a single-vehicle accident when he struck a tree on January 9, 2011. Plaintiff also revealed on his website that Fresno State spent student tuition dollars, and, upon information and belief, state dollars to hold a separate and

11

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
AND CONSPIRACY TO VIOLATE  AGAINST ALL
DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,
EQUAL PROTECTION, RETALIATION, DISCRIMINATION;
COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'
FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL

segregated graduation ceremony just for those Latino students whom refuse to assimilate or participate in the primary graduation ceremony.  Plaintiff infuriated the Defendants by posting photos of a prior Latino graduation ceremony which revealed that the ceremony's flag display did not follow the U.S. Flag Code.  Plaintiff's website infuriated the Defendants and their left-leaning student body.

23.     Faculty members, including more than one of the Defendants, violated Plaintiff's free speech rights and the prohibited conduct banned by § 103 of Fresno State's "Academic Policy Manual" (APM) (as described in ¶ 21 above).  Furthermore, such faculty members and Defendants violated the California Constitutional provisions (described in ¶ 25 below) by using office computers to email Fresno State Administrators, including Defendants Welty, Oliaro and Coon, regarding Plaintiff's website, and urged action to be taken against Plaintiff.  Defendants Welty, Oliaro, and Coon, and other administrators promoted, encouraged, nurtured, and fomented left-leaning instructors and certain students to be intolerant of outspoken conservatives like Plaintiff, and especially to promote hostility towards Plaintiff's views on the Ramirez matter.  Defendant Coon requested that students and other faculty members gather information and complaints to use against Plaintiff.  Oscar Perez, the 2010-2011 ASI Student Senator for "Parking Safety" solicited and collected complaints about Plaintiff on behalf of Defendant Coon.  Communications such as emails, correspondence, and discussions between the Defendants, including the DOE Defendants regarding Plaintiff occurred often, and with the purpose being to gather evidence for retaliation against Plaintiff, and to check on Plaintiff by monitoring his website and on campus activities.  Such actions by Defendants and those they recruited, were done specifically to "build a case" against Plaintiff to discipline him into silence and to make it intolerable for him to be a student there.  Plaintiff, without being profane or threatening in any manner, not only reported on his website his objection to the entire Ramirez matter, but also voiced his objections at the ASI government meetings, and to others with whom he came in contact.  That further radicalized the left-leaning Chicano student body and faculty members, including the Defendants, as well as the Defendant administrators, Welty, Oliaro and Coon, who then became even more intent on silencing and

12

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
AND CONSPIRACY TO VIOLATE  AGAINST ALL
DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,
EQUAL PROTECTION, RETALIATION, DISCRIMINATION;
COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'
FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL

retaliating against Plaintiff.  Like all allegations herein against the Defendants, all of Plaintiff's speech, expression and conduct were fully protected by the First Amendment of the United States Constitution, the California Constitution, and California Education Code § 66301, as described in ¶ 21 above.

24.     Like virtually every other Fresno State student, Plaintiff was upset that tuition and costs were increasing at dramatic rates, while at the same time Fresno State Administration kept receiving higher pay raises and expanded benefits.  In the Spring and Fall of 2011 and 2012 Plaintiff made several Public Records Act requests (allowed by law) to Fresno State seeking records regarding:  documents relating to the Pedro Ramirez controversy, administrator salaries, bonuses, expense accounts, and other records, especially those programs promoting cultural Marxist views, and socialist indoctrination. Plaintiff believed such records would substantiate the waste of student tuition dollars.  Plaintiff's requests caused  the Defendants and other administrators to become even more hostile and determined in their efforts to silence Plaintiff.  Plaintiff believed the obligations of the Public Records Act required Administrators at Fresno State to promptly and fully respond, except for statutorily exempt documents, but such was not the case.  There were endless delays and numerous non-responses and in many cases numerous records not provided – solely as a result of Plaintiff's outspoken conservatism.  Plaintiff learned that his requests were being reported all the way up to President Welty, and the Defendants and other faculty in the Social Science Department were extremely upset with Plaintiff's requests.  Plaintiff also realized that prior to the filing of this complaint and as recently as the week of November 6, 2012, that those in charge of Fresno State's various Facebook pages which are operated and managed by university officials were censoring free speech by deleting Plaintiff's conservative posts and in some other circumstances, permanently blocking him from posting any anti-DREAM ACT and anti-liberal posts, while allowing the posts of pro-radical left-leaning view points in support of Ramirez and other leftist posts to remain.

25.     Article IX, § 9 of the California Constitution states that "the University shall be entirely independent of all political or sectarian influences and kept free therefrom."  The Universities of

13

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
AND CONSPIRACY TO VIOLATE  AGAINST ALL
DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,
EQUAL PROTECTION, RETALIATION, DISCRIMINATION;
COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'
FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL

1   California have an Academic Policy Manual (APM) which precludes faculty members and

2   administrators from attempting to indoctrinate students in the political, social or sectarian environment,

3   or to attempt to convert students, which is precluded by those laws and the APM described in ¶ 21

4   above.  With the approval of the Defendant administrators and those in the Social Sciences Department

5   at Fresno State, the classes were taught by the other Defendants and other faculty members, for radical

6   left-leaning indoctrination, propagandized for such, while divergent and conservative points of view

7   were treated with hostility, contempt, and retaliation, by the instructors, administrators (including

8   Defendants) and other radical left leaning students who were emboldened by Defendants' contempt for

9   Plaintiff and his views.  The Defendants were contemptuous of Plaintiff – for nothing more than Plaintiff

10  exercising his free speech rights – and had urged the administrators to take action against him, which

11  quickly did occur.  The Defendant faculty and administrators not only disagreed with the conservative

12  points of view of Plaintiff, which Plaintiff acknowledges is their private and personal right to do, but,

13  in the Fresno State Campus setting,  they were totally intolerant and contemptuous of the conservative

14  points of view, condemned Plaintiff for those points of view with the intent to isolate, ostracize and chill

15  Plaintiff's free speech rights, in order to silence and punish Plaintiff, all while acting under color of state

16  law.  Such sanctions were also intended to serve as a warning to discourage any like-minded students

17  and faculty from speaking out in favor of Plaintiff and/or his viewpoints.  Defendants' communications

18  amongst themselves, other faculty members and students, and their resulting conduct towards, and about,

19  Plaintiff, were also intended and designed to relegate Plaintiff to "persona-non-grata" on and off campus,

20  and to persecute him.

21          26.     When Plaintiff learned about some of these efforts by Defendants to gather complaints

22  from students and faculty members about Plaintiff, Plaintiff began filing Public Records Act requests

23  pursuant to State Law requesting Fresno State to provide these documents regarding student, faculty and

24  administrator complaints about Plaintiff, because Plaintiff knew that he was being singled out for

25  retaliation and vindictiveness because of all of the above, especially and with regard to the Pedro

26

27                                                    14

28  **FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS**
    **AND CONSPIRACY TO VIOLATE  AGAINST ALL**
    **DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,**
    **EQUAL PROTECTION, RETALIATION, DISCRIMINATION;**
    **COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'**
    **FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL**

Ramirez issue.  Through Plaintiff's Public Records Act Request (PRA) the administrators at Fresno State, at the orders and urging of Defendants, delayed providing Plaintiff certain (or most) documents and completely refused to provide other documents – solely because of Plaintiff's views and his expression of the same.  With each one of Plaintiff's requests, the Defendants and other faculty members who were apprised of Plaintiff's PRA requests, responded by requesting and demanding that the administrators (like Welty, Oliaro and Coon) do something about Plaintiff.  One email record that was released to Plaintiff as a result of his PRA request revealed that a faculty administrator, who was the Director of Alumni Relations and Associations, had sent emails to other administrators, including the Communications Director at Fresno State, requesting that they do something about Plaintiff.  In addition, this Director requested to be able to use his Fresno State "call center", (which was only supposed to be used for receiving and soliciting alumni donations) in order to respond to caller's inquiry regarding Plaintiff's statements on his website, and/or his statements at public ASI meetings.  At no time was Plaintiff profane or threatening in any of his activities or website.  Plaintiff alleges his communications were protected by the First Amendment and § 66301 of the Education Code and Fresno State's APM, and that all of his conduct and speech were fully protected by the First Amendment.

27.     Plaintiff also learned that Oscar Perez, the Student Body Senator for Parking and Safety during the 2010-2011 academic year, was collecting complaints on behalf of Defendant Coon and the other Defendant administrators.  After Perez provided the documents to Coon, he later requested her to destroy said email communications and documents.   Many of the documents distorted and misrepresented events, where Plaintiff was merely exercising his free speech rights.  As a result of these distorted allegations and reports, Plaintiff began publically video taping his campus activities to ensure an accurate record of events were documented, because Plaintiff learned that these Defendants, along with other faculty members and administrators, were so intolerant of Plaintiff's views that they would lie about Plaintiff or events to punish him.  This made Plaintiff believe that all Defendants were "out to get" him.  Therefore, Plaintiff believed he needed to be his own "witness" by video taping events, all

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
AND CONSPIRACY TO VIOLATE  AGAINST ALL
DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,
EQUAL PROTECTION, RETALIATION, DISCRIMINATION;
COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'
FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL

of which were done in public. Secondly, he wanted to put on notice all individuals involved that there would be an accurate record of their behavior and statements, as well as with Plaintiff's own behavior and statements.

28. As part of Plaintiff's student tuition, Plaintiff must also pay a series of fees that include instructional related activities fees, a Student Body fee, and a University Student Union fee which totals hundreds of dollars each semester to the University. Much of those fees that Plaintiff is required to fund, regardless of how much he disagrees with them, is for Fresno State's funding of sanctioned groups, entities, and publications. One of those student-funded publications is one distributed with "The Collegian," which is the official Fresno State newspaper. This newspaper is published by the students, but has faculty advisors in order to make sure it is university sanctioned. Plaintiff has no issue with "The Collegian" newspaper. However, one of those supplement publication inserts distributed with "The Collegian" is an ethnic and "cultural" student publication called "La Voz de Aztlan" (hereinafter the "La Voz"), which is a Chicano and Latino American Studies Department (CLS) publication. This publication also calls itself the Valley's "Anti-Racist" and "Anti-Oppressive" newspaper. On or about May 2, 2011, "La Voz" published a "poem" which was called "America" authored by a Chicano Studies student and MEChA member, Luis Sanchez. This "poem" contained the following incendiary statements: "America the land robbed by the white savage," the "land of the biggest genocide," the "place of greed and slavery," the "rapist of earth," "America the place for institutionalized racism," the "land of the brute, the bully, the land of the glorified killers, the eater of souls," "America, where corporations are worth more than babies," "America, where women give birth but not votes," "America the one who beat my cousins with bats for being brown," "America the killer of mothers and fathers," "America the willingly blind and proudly stupid." The poem was extremely upsetting and insulting to Plaintiff, and – to be sure – others. Plaintiff was also quite offended by the poem in the student newspaper because those who controlled it, and the "poet" who wrote it, were by their own choice, voluntarily attending, and instructing at, a California university. Furthermore, their education in the U.S.

16

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
AND CONSPIRACY TO VIOLATE AGAINST ALL
DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,
EQUAL PROTECTION, RETALIATION, DISCRIMINATION;
COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'
FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL

1  was being subsidized by U.S. citizens and fellow students.  Plaintiff found it profoundly offensive that

2  a portion of his student fees were being used for such anti-American hate speech, and published with

3  the approval of Fresno State administrators and faculty.

4        29.      Plaintiff knew that the college campus and its environment is the "marketplace of ideas,"

5  with free and robust debate and speech, which is vigorously protected by the United States Constitution;

6  that the First Amendment has extra special significance and protection in the university setting; where

7  free and unfettered interplay of competing views is essential to the university's educational mission; and

8  where debate is supposed to be expected, welcomed and embraced – not liberal indoctrination.  Thus,

9  Plaintiff decided to discuss this topic with Defendant Dr. Torres, who not only was a CLS Department

10  professor, but also the student advisor for those who major in that degree, or have questions about it.

11  Furthermore, Defendant Torres is also the Department Chair of the CLS and the faculty advisor to the

12  "La Voz" publication.  Thus, on May 11, 2011, Plaintiff went to visit Defendant Torres, to determine

13  whether Defendant Torres had read the poem before he authorized its publication, and what he thought

14  about it.  Defendant Torres' office is in the immediate vicinity of other CLS professors' offices.  Shortly

15  after Plaintiff arrived on the second floor, Plaintiff witnessed Defendant Torres speaking to Defendant

16  Lopes, wherein Defendant Lopes stated that Plaintiff was "stalking" the hallway.  Plaintiff then heard

17  Defendant Torres state that the faculty should post "wanted" signs with pictures of Plaintiff's face on

18  them to mock Plaintiff and to serve as a warning to other students and faculty as to what Plaintiff looked

19  like and warn of Plaintiff's potential presence.  Prior to hearing Torres' and Lopes' conversation,

20  Plaintiff had not intended to speak at all with Defendant Lopes, but only with Defendant Torres.

21  Plaintiff's decision about speaking to Lopes then changed.  The following actions, events, retaliation,

22  discrimination and punishment followed thereafter:

23        A.      After witnessing the above Defendant Lopes' and Defendant Torres' exchange,

24  during office and business hours Plaintiff approached Defendant Torres' office door which was

25  open.  With the video camera on, Plaintiff asked Torres if he had approved of the "America"

26

27  17

28

"White Savage" poem published in that "La Voz" student newspaper. Defendant Torres refused to speak to Plaintiff. Nevertheless, Plaintiff calmly insisted on speaking to Torres about that poem. Defendant Torres' reaction was to pick up his telephone and call the Fresno State Campus Police. Plaintiff then left Defendant Torres' office, concluding that Defendant Torres would not offer any explanation.

B.     Plaintiff then approached the open office door of Defendant Lopes and asked her the same series of questions, with his video camera running. She refused to answer the questions, and when Plaintiff asked again, Lopes stated that she did not want to talk to him. She went to the door, closed it, and then called Campus Police.

C.     Defendants Lopes, Torres and (Department Dean) Gonzalez filed complaints with the Fresno State Campus Police falsely stating that Plaintiff was threatening, was attempting to instigate a physical altercation, and that they felt threatened. Said accusations were false, and the video tape shows they were false. Those statements and reports by Defendants Torres and Lopes were not based on any reasonable fear or threats, but to stifle, and cause punishment to Plaintiff.

D.     Both Defendants Lopes and Torres, and for the same reasons as ¶ C above, filed similar false reports on May 24, 2011, with Defendant Coon, then acting as: (1) the Interim Director of Student Affairs, (2) the Assistant Vice President of Student Affairs, (3) the Dean of Students, (4) the Student Conduct Administrator, and (5) Judicial Affairs Officer.

E.     Plaintiff then published the May 11, 2011 video tape events on his website, which was easily accessible to anyone, but had not been viewed in the past by the Defendants.

F.     Informed of the false reports filed by Defendants Lopes and Torres, Plaintiff then provided a CD copy of the video tape to the Fresno State Campus Police.

G.     Defendants Torres and Lopes viewed copies of the reports of the "incident" prepared by the Fresno Campus Police. The Defendants became upset because the Campus

18

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
AND CONSPIRACY TO VIOLATE  AGAINST ALL
DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,
EQUAL PROTECTION, RETALIATION, DISCRIMINATION;
COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'
FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL

Police investigator had determined, by concluding in his report, that Plaintiff was not threatening and intimidating. Defendants Torres, Lopes and Gonzalez requested the Campus Police to re-write the report to show that Plaintiff was threatening and intimidating. Defendants further requested the Campus Police to report the matter to the Fresno County District Attorney's (DA) Office, which they did, however the DA's Office refused to prosecute the matter. Defendants Lopes and Torres knew Plaintiff had committed no crime, but they proceeded with their complaints to silence, retaliate and cause Plaintiff to be disciplined.

H.      The Campus Police Department, now having reviewed the actual video tape of the incident contacted Defendants Torres and Lopes again to confront them about what they claimed Plaintiff did and said, the length of time he was in each of their offices, and to let both Torres and Lopes know that the video tape of the incident showed that their previous claims were not accurate. Both refused to correct their false claims.

I.      On the same date, May 24, 2011, Defendants Torres and Lopes submitted their false statements to Defendant Coon. Defendant Coon then mailed a letter to Plaintiff stating that it was alleged that Plaintiff had threatened Defendants Lopes and Torres. And Defendant Coon claimed that Plaintiff was in violation of the Code of Student Conduct and would thus face disciplinary action for conduct that "threatens or endangers the health, or safety . . . including physical abuse, threats, intimidation, harassment . . . ." Defendant Coon stated that Plaintiff was required to meet with her no later than June 3, 2011 for a judicial conference. Defendant Coon's letter pointed out that failure to schedule and attend the appointment could also result in a disciplinary hold being placed on Plaintiff's record.

J.      Plaintiff responded to Defendant Coon by email with copies to Defendant Welty and Campus Police, stating that Torres and Lopes' accusations were completely false, and that the Campus Police never even requested Plaintiff to provide a statement. Plaintiff had requested Defendant Coon to provide Plaintiff with copies of the reports made by all students, staff, and

19

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
AND CONSPIRACY TO VIOLATE  AGAINST ALL
DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,
EQUAL PROTECTION, RETALIATION, DISCRIMINATION;
COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'
FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL

administrators about Plaintiff.  Defendant Coon initially agreed to provide those reports, but then later refused to do so.  Plaintiff also requested any and all Campus Police reports and/or faculty statements regarding any allegations against Plaintiff.  Plaintiff advised Defendant Coon through email that: "Since it has been made very clear by university officials that objections to any point of view conflicting with the university's or Chicano radicalism will not be tolerated."  Plaintiff advised that he would meet with Dr. Coon for a judicial conference, and requested to be accompanied by legal counsel or bring with him a witnessing party to the meeting.  Defendant Coon responded by stating that the "judicial conference" was not a hearing, and that no legal counsel was allowed to participate.  Plaintiff then requested more time before the conference would take place so he could consult legal counsel because what was made clear to him that the entire incident was provoked by false allegations "made by the Department of Chicano and Latino American Studies as an assault on his rights as being upheld by a left-leaning administration aimed at oppressing an American student for his opposing political views that conflict with the university's." Plaintiff also requested that when the meeting did take place, that he be allowed to record it and video tape it.

K.     On June 2, 2011, Defendant Oliaro – not Defendant Coon – responded to Plaintiff's email which had been sent to Defendant Coon, stating that Defendant Welty had asked Defendant Oliaro to respond.  Oliaro claimed that "Dr. Welty has had a long-standing policy on our campus that attorneys may not participate in judicial proceedings," but that Plaintiff could "bring an advisor who is not an attorney."  He also stated that Defendant Coon would make those records available to Plaintiff regarding the allegations by Torres and Lopes, and provided Plaintiff until June 10, 2011 to make an appointment for the conference with Defendant Coon. Defendant Oliaro also stated that, at that conference, if Plaintiff chose to admit the allegations (the ones which Plaintiff believed – and his video tape showed – were one sided, biased, inaccurate and false) then Defendant Coon would provide Plaintiff with the information

20

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
AND CONSPIRACY TO VIOLATE  AGAINST ALL
DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,
EQUAL PROTECTION, RETALIATION, DISCRIMINATION;
COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'
FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL

regarding the kind of sanction that would result.  If Plaintiff denied the allegations, or refused to accept the sanctions, then Plaintiff could request a formal hearing, which would be assigned to a hearing officer (different than Defendant Coon).  Defendant Oliaro also stated that Plaintiff could not record the conference.  Plaintiff being allowed to bring an "advisor" and then prohibited from choosing, freely, a reasonable category of "advisors" violated his rights to freely associate and was discriminatory.

L.     Various other emails went back and forth between Plaintiff, Defendants Coon, Oliaro and Welty, and then the "conference" with Dr. Coon was scheduled for June 17, 2011. Plaintiff objected to the fact that the documents requested by Plaintiff regarding all of the allegations against Plaintiff had not been disclosed to him – and specifically those that were collected by Oscar Perez for Defendant  Coon that were destroyed (as described in ¶¶ 23 and 27 above).  Furthermore, as required by law under the Public Records Act, if there was such a destruction, the details were required to be disclosed to Plaintiff, but they were not.  Defendant Coon's refusal was based on animus against Plaintiff's free exercise of his speech rights and due process rights.  Defendant Coon's email response was to confirm the meeting for June 17, 2011, and again stated that per university policy, and as restated by Defendant Welty, Plaintiff "may bring one advisor with you, but that this person cannot be an attorney, or licensed to practice law."  The conference was held on June 17, 2011, and Defendant Coon admitted she had never viewed, nor even requested to view the video tape of the incident which had, weeks before, been posted publicly on Plaintiff's website – and provided to campus police.  Plaintiff brought an attorney with him to the conference, and who offered to assist Plaintiff, but he was precluded from participating and from being present at the "conference," which was a violation of Plaintiff's free speech, association, due process and equal protection rights.  At this "informal conference" between Plaintiff and Defendant Coon, she, without even reviewing or requesting to view the Plaintiff's "best evidence," i.e., the readily available video of the incident, and

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
AND CONSPIRACY TO VIOLATE  AGAINST ALL
DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,
EQUAL PROTECTION, RETALIATION, DISCRIMINATION;
COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'
FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL

despite Plaintiff's vehement denials of the allegations, Defendant Coon stated that, "Obviously something happened" with reference to the alleged incidents on May 11, 2011 with Defendants Torres and Lopes.  Then Defendant Coon stated that she was going to recommend sanctions being imposed on Plaintiff anyway.  Still, without even reviewing the video or requesting a copy of the tape, on June 22, 2011 Defendant Coon sent Plaintiff a proposed "settlement agreement." Defendant Coon's proposed sanctions – to which she requested Plaintiff agree – were that Plaintiff could not be within 100 feet of the Chicano and Latino American Studies Department (CLS) faculty offices, staff offices or classrooms; that he could not be within 100 feet of any faculty, staff or administrators who were appointed to the CLS program, and if there were any other violations Plaintiff would be subject to further disciplinary action.  Said sanctions also meant that Plaintiff could not even attend any classes in that building, or stand in line to order a sandwich if there happened to be someone from the CLS Department standing in line as well, or even be within 100 feet of some CLS faculty member at a rally, football game or gathering to hear a speaker.  The proposed settlement agreement stated the University was charging Plaintiff with a violation of subsection (7) of § 41301 of Title 5, of the California Code of Regulations (conduct that threatens the health or safety of a person related to the University, including threats, intimidation or harassment).  Plaintiff refused to sign such a settlement agreement.  Thus, Dr. Coon set a "judicial hearing" for August 18, 2011.  She later cancelled it on the grounds they did not have a hearing officer, but by subsequent emails, Defendant Coon attempted to coerce Plaintiff to sign the settlement agreement in order to avoid the hearing. Plaintiff continued to rebuff Coon's coercion and insisted on the hearing.  It was then rescheduled for September 13, 2011.

M.      Plaintiff engaged the services of a new (and current) attorney who then sent a number of written communications to Defendant Coon, with copies to Defendants Welty and Oliaro objecting to the procedure of not allowing Plaintiff to have an attorney at the hearing.

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
AND CONSPIRACY TO VIOLATE  AGAINST ALL
DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,
EQUAL PROTECTION, RETALIATION, DISCRIMINATION;
COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'
FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL

1    Plaintiff's counsel further pointed out that the proposed discipline was draconian, and that

2    effective cross-examination of Defendants Torres and Lopes was necessary because it was

3    obvious that none of the Defendants had viewed the video tape of the incident.  Even if they had

4    viewed the tape, it would, speciously, be found irrelevant because it was quite obvious that the

5    whole point of the hearing and sanctions was to punish Plaintiff and retaliate against him for

6    speaking out against the radicalism of the College of Social Sciences and especially the CLS

7    Department.  Fresno State also engaged their counsel to respond to Plaintiff's counsel's

8    communications, and the University's counsel also claimed that Plaintiff had no right to have

9    attorney counsel present.  Plaintiff was also advised that he could not record or video-tape the

10   hearing.

11         N.     On August 4, 2011, Defendant Coon e-mailed (and mailed) Plaintiff a letter,

12   citing the absence of a Hearing Officer, required she further postpone the formal hearing date in

13   order to find a new hearing officer.  Coon's letter also "strongly urged" Plaintiff not to approach

14   Defendants Lopes and Torres, effectively imposing sanctions without first giving Plaintiff a

15   hearing.

16         O.     On August 26, 2011, Defendant Coon e-mailed (and mailed) a letter to Plaintiff,

17   stating that, pursuant to Executive Order No. 1043, a student disciplinary proceeding was being

18   initiated against him, charging a violation of Sub-Section 7 of Section 41301 of Title 5 of the

19   California Code of Regulations regarding threatening or endangering Defendants Lopes and

20   Torres and for video taping them after being asked not to do so.  Defendant Coon also advised

21   Plaintiff that the hearing was closed to everyone "other than the person conducting the hearing,

22   you, the Student Conduct Administrator, a single advisor for you, a single advisor for the Student

23   Conduct Administrator, the person designated to record the hearing, and witnesses while they

24   are testifying."  Defendant Coon reiterated that Plaintiff's "advisor" at the hearing could not be

25   an attorney.  The letter also stated that the recommended sanctions were: (1) that Plaintiff could

26

27                                                     23

28   **FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS**
     **AND CONSPIRACY TO VIOLATE  AGAINST ALL**
     **DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,**
     **EQUAL PROTECTION, RETALIATION, DISCRIMINATION;**
     **COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'**
     **FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL**

1    not be within 100 feet of the CLS faculty offices, staff offices or classrooms ("unless you have

2    a scheduled meeting or class"); and (2) Plaintiff cannot be within 100 feet of any faculty, staff

3    or administrators that are appointed to the CLS program ("unless you have a scheduled meeting

4    or class").   The words in the parenthesis were not in the sanctions proposed by Defendant Coon

5    in her previously proposed sanction agreement from the June 17, 2011 conference with Plaintiff.

6    Plaintiff was also advised that after the hearing was conducted, the Hearing Officer would

7    prepare a report and make a recommendation to the President [Defendant Welty], or his designee

8    [Defendant Oliaro] and that one of them would issue a decision in that matter, and that decision

9    would be final, with no further right to appeal.

10          P.        Prior to the hearing on the Fresno State Campus set for September 13, 2011,

11   Plaintiff's counsel was in contact with Detective Manucharyan who had viewed the video tape,

12   and believed that Defendants Lopes and Torres were not truthful when they reported the incident

13   to the Campus Police, nor with respect to what they stated in Detective Manucharyan's follow-up

14   investigation.   Detective Manucharyan was requested to appear at the hearing and to offer

15   testimony.   Defendant Welty's rules did not and still do not permit subpoenas to witnesses.

16          Q.        At the hearing on September 13, 2011, Plaintiff's attorney was not allowed into

17   the hearing, but was relegated to remaining outside in the lobby beyond earshot of the hearing

18   proceedings, depriving Plaintiff of his right to speak to, associate with, and be advised by the

19   person Plaintiff had requested, his attorney.   Mr. Marcus Freeman, who is and was with the Arts

20   and Humanities Department at Fresno State, and who was also in the Human Resources

21   Department, introduced himself as the Hearing Officer.   While the hearing had two recording

22   devices, Defendant Coon and Mr. Freeman precluded Plaintiff from recording the hearing as

23   well.   Plaintiff then requested to have a copy of the audio of the hearing when the hearing was

24   done but both Defendant Coon and Mr. Freeman stated he could not have one because it was

25   University property.   Defendant Coon was identified at the hearing as the "investigator," even

26

27                                                    24

28    FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
AND CONSPIRACY TO VIOLATE  AGAINST ALL
DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,
EQUAL PROTECTION, RETALIATION, DISCRIMINATION;
COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'
FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL

though she was also the original sanctions/discipline person.  At the beginning of the hearing Plaintiff objected to being deprived of Due Process rights for not being allowed to have an attorney present, and from being denied his right to record the hearing.  Defendants Welty's and Oliaro's rules for the proceeding did not even permit Plaintiff to have his attorney present, even if the attorney only whispered advice to Plaintiff or passed him notes.  However, Defendant Welty's own executive order allowed the hearing officer to be an attorney.  Whereas, obviously Defendant Coon was skilled at this procedure, and Plaintiff was not.  Plaintiff was relegated to bringing an unskilled friend as his "advisor."  During the hearing Mr. Freeman refused to answer Plaintiff's questions about whether or not he had any relationships with Defendants Torres, Lopes, Coon or the Chicano and Latino American Studies (CLS) Department – despite the fact that Defendant Welty's executive order states the hearing officer can have no conflict of interest. Plaintiff refused Mr. Freeman's request that Plaintiff agree to keep the hearing confidential, because Plaintiff believed that would further violate his free speech, due process and civil rights. Mr. Freeman refused to answer any of Plaintiffs questions about whether Mr. Freeman had heard of Plaintiff's political positions or read any newspaper articles regarding Plaintiff (which appeared contrary to Defendant Welty's "no conflict" executive order), and Mr. Freeman stated that the only things that would be discussed were the events that took place on May 11, 2011; which precluded Plaintiff from developing and showing the retaliatory motives of Defendants Torres, Lopes, Coon and Gonzales, based on their contempt for Plaintiff's outspoken conservative views.  Freeman reiterated the charge against Plaintiff was subsection (7) of § 41301. Section 41301, however, bans any disciplinary action against students based on behavior protected by the First Amendment or in conflict with Education Code § 66301.  At the hearing, while Defendant Coon and Mr. Freeman both had copies of the statements that Torres and Lopes had provided, they refused to provide Plaintiff with a copy.  By this time and despite the easy availability of Plaintiff's video tape of the incident on May 11, 2011 Mr. Freeman and Defendant

25

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
AND CONSPIRACY TO VIOLATE  AGAINST ALL
DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,
EQUAL PROTECTION, RETALIATION, DISCRIMINATION;
COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'
FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL

1   Coon stated they had not seen it.  Defendant Lopes, who testified as a witness in that hearing,

2   stated that she had not seen the video, nor had the Department Chair, Defendant Luz Gonzalez.

3   Only Defendant Torres stated that he had seen the video tape.  Despite the availability of several

4   computers in the room, both Mr. Freeman and Defendant Coon refused multiple requests from

5   Plaintiff to show each of the witnesses the videotape of the "incident" which Plaintiff had

6   downloaded to a CD.  This deprived Plaintiff of his due process rights to effectively cross-

7   examine his accusers.  Mr. Freeman also refused to allow Plaintiff to ask any questions of any

8   of the witnesses regarding anything except the events on May 11, 2011 but Defendant Coon was

9   permitted to ask many questions that did not specifically relate to the events on May 11, 2011.

10   This deprived Plaintiff of his right to show motive of Defendants Torres and Lopes which was

11   their bias against Plaintiff, and motive to be untruthful.  If Plaintiff's "allowed" advisor could

12   have been his well-versed attorney, Plaintiff could have more fully explored these probative

13   issues.  Defendants Torres and Lopes admitted that they had never seen Plaintiff in person prior

14   to the events on May 11, 2011.  However, Torres admitted that prior to Plaintiff speaking to them

15   on that day's events, that he (Torres) and Lopes were both talking about Plaintiff out in the

16   hallway, with Lopes stating that Plaintiff was "stalking" the hallway.  Torres further admitted

17   that he had told her that they should place Plaintiff's picture on "wanted" posters in that building

18   to mock Plaintiff, and so that others would be made aware of what Plaintiff looked like.  In

19   Defendant Lopes' prior report to Defendant Coon and to the Police Department she stated that

20   Plaintiff had said that he was stalking her.  However, at the hearing, she could not recall whether

21   Plaintiff had indeed stated that he was "not stalking" her, while using the same word (i.e.

22   "stalking") that Defendants Lopes and Torres were using out in the hallway before they had ever

23   met Plaintiff.  Numerous times Freeman cut off Plaintiff from asking questions, but never cut

24   off Defendant Coon from asking questions.  Defendant Luz Gonzalez was called as a witness at

25   the hearing, but admitted that she never observed the incident on May 11, 2011.  Instead, she

26

27   26

28   **FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
AND CONSPIRACY TO VIOLATE  AGAINST ALL
DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,
EQUAL PROTECTION, RETALIATION, DISCRIMINATION;
COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'
FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL**

explained that she was asked to appear as a witness to repeat Defendants' Lopes and Torres claims as they were reported to her, and that she believed Torres and Lopes felt threatened. Plaintiff requested Mr. Freeman to dismiss Defendant Gonzalez' testimony because it was merely hearsay, as she did not witness the events. Nevertheless, Mr. Freeman refused reiterating that this was not a real courtroom. Plaintiff requested to play the video of the events to Defendant Gonzalez, but Freeman refused Plaintiff's request. After Defendant Coon's witnesses completed their testimony (even though Plaintiff was not given an opportunity to really examine them – in any sense of the understanding of "cross-examination") Plaintiff requested to call Detective Manucharyan to testify since he had reviewed the video tape, was aware that Defendants Lopes' and Torres' statements to the Campus Police Department were not accurate and their alleged facts were not borne out by the video tape. Defendant Coon left the room stating that she would try to call Manucharyan. When she came back, she stated that Detective Manucharyan was not available and that an unidentified person at the police station stated that since the matter was an ongoing investigation, none of the officers or detectives would be able to come testify or comment on it. Indeed, Detective Manucharyan was seated in the outside room in the lobby area with Plaintiff's attorney prepared to testify, but no one from Fresno State advised Defendants Coon or Freeman of that fact. Thus, Detective Manucharyan was precluded from testifying at the hearing. While acting as the investigator, neither Defendant "Coon," the Hearing Officer, nor two of the three Defendant witnesses had ever viewed the video tape, which had been made readily available, and yet Plaintiff was precluded from showing it at the hearing. Not only did the Hearing Officer have a conflict of interest, but the "prosecutor," Defendant Coon, had a pre-conceived disposition regarding the Plaintiff and thus, already determined what sanction she would impose on Plaintiff, of which the hearing officer, Mr. Freeman, knew.

R.      Following the hearing, Mr. Freeman made a report and recommendation to Defendant Oliaro, Defendant Welty's "designee." On September 30, 2011, Defendant Oliaro

27

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
AND CONSPIRACY TO VIOLATE  AGAINST ALL
DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,
EQUAL PROTECTION, RETALIATION, DISCRIMINATION;
COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'
FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL

issued his "decision" and stated that he had reviewed the Hearing Officer's report from the hearing conducted on September 13, 2011.  Prior to Defendant Oliaro's "decision", Plaintiff was never provided with the Hearing Officer's (Mr. Freeman's) report from that September 13, 2011 hearing.  This meant that Plaintiff was never given an opportunity to argue or contest the matter before the ultimate sanction was issued by Defendant Oliaro.  Plaintiff was later told to file a Public Records Act request to receive it, which Plaintiff did.  It showed that Mr. Freeman's report was replete with inaccuracies and blatant manipulation of the "evidence" and stated that his review showed Plaintiff violated five other provisions of § 41301, in addition to subsection (7).  Had Plaintiff been provided Freeman's report before Defendant Oliaro's decision, Plaintiff could have contested Freeman's findings and claims.  Defendant Oliaro was also determined to silence, retaliate and punish Plaintiff for his outspoken conservative point of view and his expression of that point of view.  As a result Defendant Oliaro "sustained" the Hearing Officer's findings – which at that time were unknown to Plaintiff. Defendant Oliaro claimed that by a preponderance of the evidence, Plaintiff, on May 11, 2011, violated Title 5, Section 41301(b)(7) and that Defendants Torres and Lopes reasonably could find Plaintiff's behavior to be "intimidating and harassing and were concerned for their safety."  While Defendant Oliaro mentioned that "freedom of speech is highly valued on the campus and allows for the expression of a wide range of differing points of view" and that such expression are expressly protected under the Education Code, he did not intend that for Plaintiff:  his motive and intent was the opposite, as his purpose was to silence and punish outspoken conservative speech like Plaintiff's and deter Plaintiff and other students holding the similar values from being outspoken.  He further elaborated that those free speech rights "expressly protected under Education Code" cannot "endanger the health or safety of members of the campus community," but he failed to mention or acknowledge that the freedoms protected by the U.S. and California Constitutions

28

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
AND CONSPIRACY TO VIOLATE  AGAINST ALL
DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,
EQUAL PROTECTION, RETALIATION, DISCRIMINATION;
COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'
FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL

trumped his reading of the Education Code, which code also expressly stated that it was trumped by the free speech clauses of the U.S. and California Constitutions.

S.      As to Defendant Oliaro's sanction against the Plaintiff on September 30, 2011, he retaliated and punished Plaintiff for expressing his contrary points of view, and retaliated and punished Plaintiff for seeking and pursuing the matter to a Judicial Hearing, by ***increasing*** that sanction which Defendant Coon even recommended as described in ¶ 29, subparagraph "O." Defendant Oliaro expressly stated that he was also increasing the sanctions/penalty, from those recommended by the "Hearing Officer," as Defendant Oliaro issued a debilitating sanction that Plaintiff was placed on "disciplinary probation effective immediately through the spring semester until May 20, 2012 (as more fully described in ¶ T. below).  Defendant Oliaro held that as a condition of the probation "your access on campus is restricted such that you shall not be within 100 feet of the Chicano Latin American studies faculty or staff or their offices or classrooms in which they are teaching, on the 2nd floor Social Science Building, unless you have prescheduled business, a class, or an appointment with a faculty or staff member in that area."  Defendant Oliaro further held,  "I'm imposing this sanction of probation, which was not part of the recommendation of the Hearing Officer, in addition to limiting your access as described above, because I believe that the behavior in which you engaged constituted a serious violation of the Code of Conduct and calls for such a sanction."  Defendant Oliaro then expressed gratuitous lip-service again to free speech rights by stating: "I reiterate that my decision is not based upon your exercise of your constitutionally protected right to freedom of speech or by any interest of the University to stifle your free expression but, rather, upon the inappropriate manner in which you sought to express yourself," and that "this process is intended as an educational experience and I hope you accept it in that vein."  Yet, at the same time, Plaintiff was not provided the same "educational" opportunity and access to the building with other students, including those taking

29

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
AND CONSPIRACY TO VIOLATE  AGAINST ALL
DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,
EQUAL PROTECTION, RETALIATION, DISCRIMINATION;
COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'
FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL

CLS classes, nor access provided to non-students, like the general public, convicted criminals or mentally unstable.

T.      In addition to the "100 feet" rule sanction, Defendant Oliaro placed Plaintiff on "disciplinary probation" (as described in subparagraph S. above) through the Spring semester of the following year until May 20, 2012.  This was intended to stifle and severely chill Plaintiff's free speech rights, access rights, association rights, campaigning and petitioning rights, in that Plaintiff would then be precluded from occupying any position on the ASI Student Body for the 2011-2012 school year.  In addition, Plaintiff dotted all the i's and crossed all the t's to form his own student club on campus and to be recognized as an official of that club (a chapter of the national organization on campus called Young Americans for Liberty).  While the new campus club the Plaintiff formed was approved as a recognized organization on November 9, 2011, Defendant Dr. Welty wrote Plaintiff and stated that because Plaintiff was on "disciplinary probation" he could not occupy the positions of either President or Treasurer of his own club because of Defendant Welty's own executive order.  Buttressed by several letters of recommendation for Plaintiff to run for and occupy a vacant seat on the ASI Student Body Government, Defendants Welty and Oliaro both denied that request because Plaintiff was on "disciplinary probation."  The disciplinary probation also precluded Plaintiff from entering the second floor of the Social Science building to post notices regarding his approved club, or campaigning for himself or others.

U.      Various other recriminations and discrimination against Plaintiff by Defendants and Fresno State Administrators occurred due to them singling out Plaintiff from being able to have the same rights and liberties of other students at the Fresno State campus – all because of Plaintiff's exercise of his free speech rights.

30.      As stated in subparagraphs R, S, and T, above Defendant Oliaro issued his written, final and "not appealable" decision on September 30, 2011 with his imposed probation through May 20,

30

2012.  Defendant Oliaro further enjoined Plaintiff from receiving the same free and unencumbered access to all accommodations provided to all of the other students at Fresno State.  Plaintiff had numerous objections to the alleged findings by Defendant Oliaro, and was never informed of what the hearing officer's findings and recommendations were before the Oliaro ruling.  Plaintiff also took great exception to the alleged "facts" found by Defendant Oliaro.  Plaintiff alleges that the Defendant Oliaro's findings and sanctions were imposed, not because of any violation of the student conduct code, nor the regulations found in the administrative codes, but solely because Plaintiff was a staunch and outspoken constitutional conservative who objected by words, actions, e-mails, his website, and in person to the events, actions, and communications described above, and by proceeding through the Fresno State hearing process.  Plaintiff was being singled out for retribution because:  he dared to disagree with the Defendants' (and other faculty's and administrators') liberal left-leaning policies (like Pedro Ramirez, DREAM ACT, the "poem," separate Latino graduation ceremonies, etc.), and especially those in the Social Sciences Department, and CLS Department; and because Plaintiff insisted upon proceeding through the hearing, and also insisting upon his right to an attorney.  While Plaintiff was determined to comply with the Defendant Oliaro's sanctions and probation period, the following occurred thereafter in the Fall 2011 semester, which further violated Plaintiff's free speech, free association rights, equal protection rights, his right to petition for redress of grievances, and his due process rights.

31.     In the Fall of 2011, Plaintiff was enrolled in RA125 (Recreation Administration), a class called "Diversity and Inclusive Practices in Recreation."  There was an assignment by a professor from the Recreation Department, Nancy Nisbett, for students to choose a building, or an area of the Fresno State Campus, in order to do a complete and detailed determination as to whether or not that building/premises complied with the American (with) Disabilities Act (ADA).  This was educational as it would assist to prepare those recreation majors with what they may have to do in their future occupation in order to comply with the ADA requirements.  Professor Nisbett authorized Plaintiff to conduct a study on the Social Science building, which no other student chose to analyze.  On December

31

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
AND CONSPIRACY TO VIOLATE  AGAINST ALL
DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,
EQUAL PROTECTION, RETALIATION, DISCRIMINATION;
COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'
FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL

1, 2011, Professor Nisbett advised Plaintiff to analyze the Social Science building and also the parking area which is closest to the building. The following is what occurred:

A.      On that same day, December 1, 2011, Plaintiff proceeded to the Social Science building with his written ADA requirements, charts, tape measure, and (if needed) video camera, to take photo and video images of any ADA violations or, if need be, altercations with University officials if they arose. When Plaintiff quietly proceeded with his work assignment, another CLS faculty member confronted him, telling Plaintiff that he was not allowed to be in that building. This faculty member then contacted Defendant Gonzalez who also confronted Plaintiff, and advised Plaintiff that he was not allowed to be there. Plaintiff stated that he was allowed to be there because he had business there, and if she, Defendant Gonzalez, was going to report him, that she please tell the truth this time regarding what she actually observed. Campus Police were then called, and an officer arrived and confronted Plaintiff about why he was there. Plaintiff stated that he had a school business assignment to be in the building, and while Plaintiff attempted to do a few more tasks on his ADA assignment, approximately three Campus Police officers followed Plaintiff for approximately 15-20 minutes until Plaintiff left the building. Due to all these frequent interruptions, Plaintiff ran out of time to finish his assignment, so he had to return the next day.

B.      On the next day, December 2, 2011, Plaintiff determined that he needed to again bring his video camera as his witness, since the prior day's incident was escalated by Defendant Gonzalez, and because Plaintiff did not know what Defendant Gonzalez told the Campus Police or how they recorded the events. According to the probationary conditions set forth by Defendants Oliaro and Welty, and because Plaintiff had school business in the Social Science building, Plaintiff proceeded to said building. Plaintiff was there with his check list of ADA requirements, his tape measure, and his video camera. Plaintiff continued to quietly conduct his extra-credit assignment as authorized by Professor Nisbett, when his presence was reported by

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
AND CONSPIRACY TO VIOLATE  AGAINST ALL
DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,
EQUAL PROTECTION, RETALIATION, DISCRIMINATION;
COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'
FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL

a CLS faculty member to Defendant Gonzalez who again loudly confronted Plaintiff, scolding him that he was not permitted to be there. As a crowd of students began to gather, Plaintiff brought out his video camera and began recording as Gonzalez reached out and made physical contact with Plaintiff and his camera. Then, at least one other professor, Defendant Jendian, appeared and loudly confronted Plaintiff, while Defendant Gonzalez then immediately request bystanders to call the Campus Police stating that Plaintiff was violating the sanctions imposed upon him and causing a disruption. Meanwhile Defendant Jendian confronted and pursued Plaintiff as Plaintiff's video camera was recording. Defendant Jendian, in a threatening tone, falsely stated that Plaintiff was about ready to hit him (Jendian) with the video camera – when in fact Defendant Jendian was the aggressor. As Plaintiff backed-up into the hallway wall to avoid the hostile intrusion and attack by Defendant Jendian, Defendant Jendian kept pursuing and stalking up to Plaintiff while attempting to get behind Plaintiff, and Defendant Jendian accosted Plaintiff. Plaintiff held his video camera in one hand and his tape measure in the other and was trying to back away from Defendant Jendian as Jendian raised his fist and was postured ready to strike Plaintiff. While this was occurring, the Campus Police arrived because of the demand of Defendant Gonzalez' false claims that Plaintiff was not authorized to be there, was causing a disruption, and was violating the sanction order. Plaintiff was then detained by Campus Police, and Plaintiff advised the officers that he did indeed have business there, and that he was not in violation of the sanction order. Nevertheless, the Campus Police continued to detain him. When Plaintiff advised Lieutenant Shrum of the Campus Police that she ought to be interviewing other witnesses who saw the entire confrontation that was perpetuated by Defendants Gonzalez and Jendian from the start, Lieutenant Shrum sternly advised Plaintiff to not advise her how to do her job. Meanwhile, Defendant Jendian falsely told the Campus Police that it was Plaintiff who was accosting and threatening him and that he feared for his safety, all of which was totally false. Defendant Jendian's motives for said false reporting was to punish

33

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
AND CONSPIRACY TO VIOLATE  AGAINST ALL
DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,
EQUAL PROTECTION, RETALIATION, DISCRIMINATION;
COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'
FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL

Plaintiff, to further Defendant Jendian's and the other Defendants' intent to rid themselves of such an outspoken conservative as described above.  Plaintiff immediately contacted his attorney by cell phone and requested all of the officers present to wait until his attorney arrived.  The Campus Police officers refused to wait for his attorney's arrival, detaining Plaintiff while they pursued their investigation.  They stated that if the attorney wanted to come there, he should instead come to their Campus Police station.

C.     Plaintiff's attorney soon arrived at the Campus Police Station, with a copy of Defendant Oliaro's September 30, 2011 order of probation and sanctions, plus a copy of Professor Nisbett's email exchange with Plaintiff outlining her direction for him to perform the ADA compliance check on the Social Science building, along with Plaintiff's assignment notes. Plaintiff and his counsel met with the Chief of the Campus Police, Dave Huerta, and two other Campus Police officers who then admitted that they had never seen Dr. Oliaro's September 30, 2011 sanction orders: Chief Huerta explained that due to "student privacy rights," they were not privy to the sanction order.  They stated that neither the College Dean, Defendant Luz Gonzalez, nor them (the Campus Police) were aware of any restrictions nor, alarmingly, exceptions to said restrictions – but they just had assumed that Plaintiff was precluded from ever stepping inside the Social Sciences Department or being anywhere near the faculty or administrators therein.

D.     Plaintiff was profoundly stunned that even the Campus Police did not know what Plaintiff's restrictions were, if any, nor – especially – the exceptions to those restrictions authorized by Dr. Oliaro, which had explained when Plaintiff could be in the Social Science Building or anywhere close to the CLS Department – as described in ¶¶ 29R and S.  It was at this "meeting" that Plaintiff's counsel provided tp the Campus Police a copy of: (1) Defendant Oliaro's sanction order – which clearly stated that Plaintiff was not restricted from that Social Science Department nor the CLS Department in that building if he had "authorized" business to be there and; (2) the email authorization by Professor Nisbett to be in the building on business

34

regarding ADA compliance.  As a footnote, Plaintiff found numerous violations of the ADA on and in the Social Sciences building and Professor Nisbett later gave his paper an "A" grade.

E.      Plaintiff soon thereafter provided a copy of the video tape of the December 2, 2011, incident to the Campus Police Department and the officers.  Several viewed that video tape and concluded that it was Defendant Luz Gonzalez and Defendant Jendian who were the aggressors that day, and that they had not told the truth.  The Campus Police officers who viewed the video tape realized that it was these two Defendants who totally interfered with Plaintiff's "educational process" and educational "business" in that department, and that it was Defendant Jendian who aggressively confronted Plaintiff with his fist raised in a threatening manner, ready to strike Plaintiff.  Plaintiff's video revealed that Defendant Jendian accosted Plaintiff with incendiary rhetoric, attempting to entice Plaintiff to assault Jendian, when all Plaintiff did was continue to back away from the confrontation while Jendian pursued him.  These actions by Defendants Jendian and Gonzalez were in retaliation against Plaintiff for all the reasons stated in this complaint and were done with hostility and animus – and not based on Defendants' fear for their safety.  Defendants Welty and Oliaro exacerbated and caused the prolonged detention of Plaintiff by not informing the Campus Police of the sanctions order – and especially the exceptions to the sanctions order, and by creating, fomenting and ratifying this outward hostility to Plaintiff.

F.      Despite the fact that Plaintiff was in full compliance with Defendants Oliaro's and Welty's sanctions order of September 30, 2011, and that it was Defendants Jendian and Gonzalez who were the aggressors and retaliated against Plaintiff, on December 15, 2011 Defendant Oliaro sent a letter to Plaintiff stating that there must have been some "confusion regarding [Plaintiff's] presence on the second floor of the Social Science Building on December 1 and 2, 2011." Defendant Oliaro further stated that: "specifically, there was concern that you may have violated the probationary status that I imposed on you in September, by being present on that floor. "

35

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
AND CONSPIRACY TO VIOLATE  AGAINST ALL
DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,
EQUAL PROTECTION, RETALIATION, DISCRIMINATION;
COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'
FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL

Defendant Oliaro further stated, "ultimately, it was determined that you had not violated your probationary status because you were present on the second floor to complete a class assignment for a course taught by Professor Nancy Nisbett."  However, instead of apologizing to Plaintiff, or reprimanding Defendants Gonzalez and Jendian, Defendant Oliaro retaliated further by stating that while Plaintiff was allowed to be on the second floor of that building for "prescheduled business, a class or an appointment with the faculty or staff member," "even when you are present on the second floor for an authorized purpose, confusion can arise if the faculty or staff are unaware that your presence is authorized.  In order to avoid such confusion in the future, I will expect you to provide prior notification to the Dean's Office of any visit to the second floor of the Social Science Building.  Such notification should be provided to the Dean's Office at least one day prior to any visits so that there will be no confusion regarding your permission to be on the second floor."  Of course, that Dean to be "notified" was Defendant Gonzalez.  Such requirement to provide 24 hour notice was not part of the September 30, 2011 order, thus imposing further unnecessary requirements upon Plaintiff without affording him due process.  Defendant Welty approved of and ratified Defendant Oliaro's further sanction.

G.      Even after imposing the draconian sanctions, and then the incidents of December 1 and 2, 2011, Defendants continued retaliatory actions against Plaintiff.  Plaintiff had enrolled in two courses, History 186, and Economics 181, whose classes were held in the second floor of the Social Science Building for the Spring, 2012 semester, which began in January 17, 2012.  Registration records showed that Plaintiff was enrolled in these classes since the previous semester, but for good measure, on Tuesday, January 17, 2012 Plaintiff's counsel contacted Campus Police to abide by the newly imposed "24 hour notice rule" and to remind the University that Plaintiff would be attending classes in that building for the Spring semester, and on the days and times for each week.  On the first day of Spring class instruction, Plaintiff arrived early for class and, like many other students often do, he was quietly eating lunch at a table located at the

36

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
AND CONSPIRACY TO VIOLATE  AGAINST ALL
DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,
EQUAL PROTECTION, RETALIATION, DISCRIMINATION;
COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'
FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL

end of the hallway on the second floor of the Social Science Building. The hallway also contained the offices of CLS and Sociology departments. Shortly after Plaintiff sat down to begin consuming his lunch, an associate professor of the CLS Department, Christina Herrera, stared at Plaintiff while walking to her office and then sarcastically commented: "Let me guess, another extra credit assignment?" Then just before entering her office and closing the door she stated to Plaintiff "You know you are not suppose to be here, right?" Herrera then voiced her displeasure of Plaintiff's presence on that day to the Campus Police, but since the Campus Police were already advised that Plaintiff had a class scheduled, they knew they could take no action against him. Herrera then communicated her displeasure to Defendant Gonzalez, who then communicated with Defendant Oliaro to insist on tough action be taken against the Plaintiff for merely eating his lunch at the only table located on the second floor of the Social Science Building prior to class starting. It is not unusual for students to use this table at the end of the hallway to eat a meal or chat before class. However, on January 24, 2012 Defendant Oliaro e-mailed a letter to Plaintiff, with a copy to the Chief of the Campus Police and Defendant Gonzalez, confirming the Plaintiff was authorized to be on the second floor to attend "your scheduled classes," but then counseled Plaintiff that "other than when you're in those classrooms attending your class (or engaged in another authorized activity on the second floor), you are required to maintain the 100 foot distance from the CLS faculty or staff or their offices or classrooms in which they are teaching on the second floor of the Social Science Building." Plaintiff's counsel then complained to Defendant Oliaro (and then Fresno State's counsel, who had defended the Oliaro response), that Oliaro's sanctions continued to be a moving target. For example, was the 100 feet restriction the shortest walking path, elevator path, or spacially?; Just where does the CLS faculty or staff or their offices or classrooms in which they are teaching start or end so Plaintiff could remain 100 feet away until at some point he would be allowed to cross that barrier without being too early, but not late for class, and how soon after class is excused

37

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
AND CONSPIRACY TO VIOLATE  AGAINST ALL
DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,
EQUAL PROTECTION, RETALIATION, DISCRIMINATION;
COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'
FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL

must Plaintiff race beyond the 100 foot barrier. University counsel responded that Defendant Oliaro's letter dated January 24, 2012 was not imposing any further disciplinary sanctions, and the 24 hour notice must be complied with. Plaintiff's counsel responded that Plaintiff had classes every day in that building on the second floor, the faculty there already have access to Plaintiff's schedule, know his instructors names and room numbers and therefore Plaintiff would not be providing 24 advanced notice. No one from the University responded to the questions about how soon before class Plaintiff could arrive, or how soon after class must he vacate the hallway. Defendants' counsel failed to answer any of those other questions. All the abuses described above were further examples of Defendants' relentless efforts to retaliate against and make Plaintiff's life on campus miserable, because of his outspoken conservative viewpoint.

32.     Thus, in further violation of Plaintiff's constitutional and civil rights, although Plaintiff was punished, but neither Defendants Gonzalez nor Jendian were ever punished for their actions and misdeeds on December 1, and 2, 2011. Defendant Oliaro further retaliated and punished Plaintiff by placing yet another condition on Plaintiff's probation and sanctions by requiring Plaintiff to provide at least one day's notice to the Dean of the College of Social Sciences, Defendant Gonzalez, who confronted and accosted Plaintiff on December 2, 2011 and who also testified against Plaintiff at the hearing on September 13, 2011, and who was the same person that had complained, via email and in her testimony regarding her objections to Plaintiff's political points of view as described above in this complaint. Furthermore, nothing in Fresno State's Executive Orders or Judicial Affairs hearing rules permit an unilateral modification to the sanctions order – especially since, and determined by Defendants Oliaro and Welty, Plaintiff had not violated any of Defendant Oliaro's and Welty's original sanctions order from September 30, 2011. This again deprived Plaintiff of due process and violated his free speech and association rights, and civil rights.

33.     The sanctions and punishment imposed by Defendant Oliaro are even more draconian than the sanctions previously sought by Defendant Coon, and that those recommended by the Hearing

**FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
AND CONSPIRACY TO VIOLATE  AGAINST ALL
DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,
EQUAL PROTECTION, RETALIATION, DISCRIMINATION;
COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'
FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL**

1    Officer.  Plaintiff was not provided with a copy of the hearing officer's report and recommendation, nor

2    provided the opportunity to respond to the alleged findings Mr. Freeman, made nor permitted to appeal

3    to Oliaro before he rendered his "not appealable" sanction order.  The sanction imposed was similar to

4    a criminal or civil restraining order barring Plaintiff from being within 100 feet of the Chicano and

5    Latino Studies faculty, or their offices or classrooms or even being in the Social Science Building unless

6    Plaintiff had prescheduled business, a class, or an appointment with faculty or staff member in that area.

7    Furthermore, by Defendants Oliaro, Welty and Coon refusing to provide to Campus Police and

8    Defendant Gonzalez the Defendant Oliaro's September 30, 2011 sanction order, and exceptions for

9    Plaintiff being allowed to be in the social sciences building, it created and caused additional violations

10   of Plaintiff's free speech, association and Fourth Amendment rights, and thus Plaintiff's civil rights.

11   The Fresno State Campus is a public facility for which Plaintiff pays full tuition to attend.  Virtually

12   every other student and non-students, including visitors – with criminal convictions, on parole or

13   otherwise would have full access to that Social Science Building.  Furthermore, the order with respect

14   to "prescheduled business" is vague and ambiguous, and has a chilling affect on Plaintiff's education,

15   educational experience, and association rights, because "prescheduled business" is not defined.  No other

16   student must labor under any such rule, and thus further chills Plaintiff's First Amendment and Due

17   Process rights.

18          34.     Plaintiff was never advised that if he decided to redress his grievances and exercise his

19   rights to face his accusers and confront the evidence, that by doing so, a harsher penalty would or could

20   be meted out.  However, that is exactly what Defendant Oliaro did, as the imposition of "probation" is

21   draconian and had an immediate impact upon Plaintiff, and a lifetime impact, as there are no "do-overs"

22   to one's under graduate college education.  Because while Plaintiff was on "probation" he could not even

23   be the president or treasurer of his own campus group that he formed, nor was he allowed to be a student

24   senator on ASI's Student Government which Plaintiff intended to do, and wanted to do – in order to be

25   a conservative voice during the 2011-2012 academic year.  During the Plaintiff's probationary period

26

27                                                      39

28   **FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
     AND CONSPIRACY TO VIOLATE  AGAINST ALL
     DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,
     EQUAL PROTECTION, RETALIATION, DISCRIMINATION;
     COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'
     FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL**

there was a vacancy in student government to represent his "college of Health and Human Services. Plaintiff applied to fill this ASI vacancy to further his educational experience and express his conservative viewpoint in the left-leaning student body government.  In further retaliation, Defendants Welty and Oliaro denied Plaintiff's request for a waiver that was needed for him to qualify for the position. The Defendants' denial to issue such a waiver precluded Plaintiff from participating in student government for the remainder of that academic year.  Such preclusion prevented Plaintiff exercising his educational rights, which violate his First Amendment and civil rights.

35.    With respect to the incident on December 1 and 2, 2011 (as described in more detail in ¶¶ 31-33 above) neither Defendant Oliaro nor Defendant Welty addressed the situation by apologizing to the Plaintiff, nor punish or reprimand Defendants Jendian or Gonzalez nor did he apologize for the fact that, after Plaintiff was accosted by Defendants Gonzalez and Jendian, Plaintiff was consequently detained and accosted by the Campus Police.  Furthermore, Defendants Oliaro and Welty continued to violate Plaintiff's free speech and due process rights by failing to inform the other Defendants and the Campus Police that Plaintiff had a right to be in the Social Sciences building for business and classes. Instead, Defendant Oliaro – with approval of Defendant Welty – imposed – without a hearing or an opportunity for Plaintiff to respond – yet another probationary condition, which was to require Plaintiff to provide at least one day notice of any visit to the second floor of the Social Sciences Building. Plaintiff was further required to provide such notice to Defendant Gonzalez, who had already shown through her emails, discussions, and conduct that Plaintiff was an "enemy" of her's, and that she harbored immense animus towards Plaintiff.  This animus was similarly mirrored and expressed by the majority of the faculty and students in the CLS curriculum because Plaintiff exercised his free speech rights in criticizing: (1) the proposed DREAM ACT, (2) Pedro Ramirez, (3) the "La Voz" publication and (4) the separate graduation ceremonies for Latinos and many other issues discussed on the Plaintiff's website and statements at ASI meetings.  All of the Defendants were emboldened because of the sanctions imposed on Plaintiff and the policies, acts, conduct, press releases, and emails demonstrating

40

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
AND CONSPIRACY TO VIOLATE  AGAINST ALL
DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,
EQUAL PROTECTION, RETALIATION, DISCRIMINATION;
COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'
FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL

1  that Defendants Welty and Oliaro nurtured, propagandized, and fomented the left-leaning bias and

2  attitudes espoused by the liberals and radical groups on campus.  It became obvious to Plaintiff that

3  diverse points of view or debate, like those stated views of Plaintiff, would not be tolerated, and in fact,

4  would be punished.  The general types of conduct in this matter Defendants inflicted on Plaintiff,

5  because of his outspoken, contrary, view points, was critically condemned in a publication by the

6  National Association of Scholars (NAS).  This NAS report prepared for the Regents of the University

7  of California by the California Association of Scholars, a division of the NAS, was published in an April

8  2012 study entitled: "**A CRISIS OF COMPETENCE**; **The Corrupting Effect of Political Activism**

9  **in the University of California**."  Defendants Welty, Oliaro and Coon must have known of and read

10  the report.

11      36.     Simply because Plaintiff has a constitutionally conservative and libertarian political and

12  social philosophy, and the fact that he is outspoken about it, should not subject him to ridicule or

13  retaliation, and/or abuse in a University setting.  Nevertheless at Fresno State University where radical

14  leftists control the Social Science building, and all public debate, the administration and faculty,

15  including and especially the Defendants, were at the forefront and, as such, embraced the leftist agenda

16  – which included punishing those students like Plaintiff.  As a result, Plaintiff was singled out for

17  retribution, animus and punishment, to warn and spread the word in order to chill the speech of other

18  or future potential conservative students (or figures) like Plaintiff.  Thus, Defendants desired and

19  intended for Plaintiff to become their infamous "poster boy," like a wanted poster, as warming to others

20  to hide and/or "hush" their conservative views.  Neither Defendants Welty, Oliaro nor Coon punished,

21  sanctioned or even sought to punish or sanction a whole liberal group of 80 Fresno State students,

22  including the "MEChA" members, "SQE" members, "United 4 Ed" members, and the radical "Brown

23  Berets" who occupied Defendant Oliaro's office a year before in the Spring of 2010 in protest of rising

24  tuition costs.  On March 4, 2010 from 1:20 pm until 9:40 pm., all those involved in this incident, were

25  disorderly, caused a substantial obstruction, were acting threateningly, were hostile and rude,  became

41

**FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS**
**AND CONSPIRACY TO VIOLATE  AGAINST ALL**
**DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,**
**EQUAL PROTECTION, RETALIATION, DISCRIMINATION;**
**COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'**
**FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL**

trespassers, interrupted business, video recorded after being asked not to do so, refused to comply with

Campus Police orders, yelled at both Defendants Oliaro and Coon, and refused to leave the office after

closing hours.  Campus Police, and assisted by Fresno Police Department officers, intended to forcibly

remove said disorderly trespassers but Defendant Oliaro ordered the police not to take any action.  In

stark contrast, all the trespassers were all glorified by Defendants for their courage and defiant behavior

during this occupation.  At least one member participating in this disturbance was an ASI official, but

this person was never precluded from serving in ASI or placed on any type of probation.  Such actions

against Plaintiff by Defendants were heavy handed, discriminatory, done with animus towards Plaintiff,

and chilled his free speech rights and served as a hostile warning to future like minded conservatives and

libertarians who would otherwise express their free speech views.

37.     Plaintiff's once-in-a-lifetime under-graduate college experience, not only to earn a degree,

but to learn, educate himself, attempt to educate others, debate issues, and become part of the Fresno

State experience by being involved in Fresno State issues, campus life, clubs and organizations,

including student issues, was basically persecuted by the conduct, actions, communications of, and

retaliation and punishment by the Defendants.  Plaintiff will never get back those two years spent at

Fresno State and is entitled to damages for said violations as follows:

**A.     General and Compensatory Damages**:

38.     The Defendants, motivated by evil intent, callous indifference to the higher education

experience and learning of students like Plaintiff, caused Plaintiff severe mental and emotional distress,

inflicted humiliation and embarrassment upon Plaintiff, and then, when Plaintiff attempted to speak-up

for his rights, and demand the process that was due Plaintiff, he was further punished, ridiculed and

embarrassed, and retaliated against.  Plaintiff was precluded from freely traveling throughout the Fresno

State Campus, was precluded from exercising his free speech, association and political rights, was

humiliated after he formed his own club because he was precluded from being the President or Treasurer

of it because Plaintiff was placed on "disciplinary probation."  None of those Defendants who harassed,

42

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
AND CONSPIRACY TO VIOLATE  AGAINST ALL
DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,
EQUAL PROTECTION, RETALIATION, DISCRIMINATION;
COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'
FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL

accosted, confronted, told lies about or called the Campus Police to detain or arrest the Plaintiff, were ever punished.  Defendants knew or should have known Plaintiff would suffer harm to his reputation, demoralized often in wanting to continue his education, and especially at Fresno State, and was publicly ridiculed by the Defendants to other faculty and students, even going so far as to propose hanging-up "wanted" posters in a significant building at Fresno State, the Social Science Building.  Defendants set about to collect communications from other left-leaning and radical leftist students and faculty members in order to create a "file" against Plaintiff, so that Defendants could hound, harass, confront, accost, retaliate against and punish Plaintiff.  Defendants Welty and Oliaro condoned, ratified, and fomented the hostility, retribution, retaliation and punishment.  Plaintiff also was substantially chilled in exercising his free speech rights, travel rights and equal protection rights.  Plaintiff has suffered substantial emotional distress including sleeplessness, loss of appetite, stomach aches, headaches, fear, heart palpitations, depression, anger, grief, extreme worry, loneliness, difficulty concentrating, loss of enjoyment being on campus, anxiety and immense stress from Defendants' conduct and continuous conduct entitling Plaintiff to compensatory and general damages as a result thereof, and in amount according to proof, but in excess of the statutory minimum jurisdiction of the Superior Court.

**B.**     **Special Damages**:

39.     The Defendants charged in each cause of action below are jointly and severally liable for special damages in the amount of all tuition and student fees paid and/or debt he assumed over the course of his enrollment at Fresno State, including books and expenses, in an amount according to proof, but in excess of the statutory minimum jurisdiction of the Superior Court.

**C.**     **Punitive Damages:**

40.     Defendants' conduct was evil, motivated by evil intent, was oppressive, outrageous and despicable all as described above warranting punitive damages in an amount according to proof. Plaintiff can never gain back the real, intended-to-be, and expected two plus year college experience.

**IV.**

43

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
AND CONSPIRACY TO VIOLATE  AGAINST ALL
DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,
EQUAL PROTECTION, RETALIATION, DISCRIMINATION;
COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'
FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL

**ADDITIONAL STATEMENT OF FACTS RELEVANT TO EACH,
EVERY ALL CAUSES OF ACTION AND PRAYER FOR RELIEF BELOW**

41.     Plaintiff incorporates as though fully set forth, all of the allegations stated above.

42.     Each and every one of the actions alleged above and below, were taken and done by the Defendants under color of state law.  California State University, Fresno, a.k.a. Fresno State, is a public university with powers granted by the California Constitution, and state law, but also with restrictions on those powers under both California constitutional and state law.  Thus the administrators, from Defendant Welty, and while sued in his individual capacity, was and is the President of Fresno State, Defendant Oliaro and Defendant Coon, with positions described in ¶¶ 3 and 4 above, as well as the Defendant faculty members, were all state employees.  Those Defendants held the "under color of state law" "hammer" over the Plaintiffs' head.  The actions taken by the Defendants were done because they believed they had the power under Sate law to take said actions, and intended to inflict the described injuries on Plaintiff.

43.     Each of the causes of action described below, and all of the facts described above, were done for the purpose of the Defendants depriving, both directly and indirectly, the Plaintiff of the equal protection laws, Plaintiff's equal privileges and immunities under the laws, and in violation of his U.S. constitutional rights to free speech, free expression, free assembly, due process rights and rights to be secure from unreasonable seizures of his person.  This was done by the Defendants with the intent to silence, intimidate, punish, discriminate against, retaliate and harass Plaintiff solely on the account of Plaintiff expressing a political, social and cultural view to which the Defendants opposed, with Plaintiff often expressing a political and philosophical point of view to which the Defendants wished to silence and punish, and use their power under color of law.  Said protected constitutional rights were and are made applicable to the state and its officers and employees by the Fourteenth Amendment of the U.S. Constitution.

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
AND CONSPIRACY TO VIOLATE  AGAINST ALL
DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,
EQUAL PROTECTION, RETALIATION, DISCRIMINATION;
COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'
FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL

44.     Defendants knew, or should have known, or were grossly negligent in allegedly not knowing, that said actions by the Defendants described above, as well as described below, violated Plaintiff's constitutional rights, and thus his civil rights pursuant to 42 U.S.C. §§ 1983, and 1985, which caused damages as described in ¶¶ 38 and 40 above, in an amount according to proof, but in excess of the Superior Court's jurisdiction.

45.     Defendants Welty and Oliaro are named in each and every cause of action below because those two Defendants created a culture on the Fresno State Campus, and amongst its faculty; including the other Defendants, and incited and fomented a culture on that campus that embraced and protected the liberal, left-leaning, progressive and/or Marxist/socialist speech and conduct, used their position and power to embrace and cheer-lead said conduct and actions.  Defendants Welty and Oliaro also empowered those (including the other Defendants) who wished to punish, silence, harass, intimidate and discriminate against persons, like, and especially Plaintiff, and points of view like those of Plaintiff, and empowered said administrators and faculty members to take such actions against the Plaintiff. Defendants Oliaro and Welty, through direct and indirect intimidation persuaded the Fresno State Campus Police to carry out the wishes of and actions of said Defendants, in violation of Plaintiff's civil rights.  Defendants Welty and Oliaro failed to train faculty members regarding tolerance for political speech with which they disagreed, but trained and schooled faculty members on "diversity." Defendants Welty and Oliaro failed to train and counsel faculty members on the requirements of the Academic Policy Manual as described in ¶ 21 above and the California constitutional requirements described in ¶ 25 above.  Defendants Welty and Oliaro acquiesced in and fomented such conduct.  The Fresno State Policy Manual was that of Defendants Welty's and Oliaro's, and it was used especially to silence and punish Plaintiff.  There is a direct causal connection between each of the Defendant's conduct described herein and the actions of Defendants Welty and Oliaro.

///

///

45

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
AND CONSPIRACY TO VIOLATE  AGAINST ALL
DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,
EQUAL PROTECTION, RETALIATION, DISCRIMINATION;
COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'
FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL

# V.

## **FIRST CAUSE OF ACTION**

### (Conspiracy to Violate Plaintiff's Civil Rights pursuant to 42 U.S.C. §§ 1983 and 1985 v. all Defendants)

46.     Plaintiff incorporates herein the allegations of ¶¶ 1 through 45 above, as though fully set forth.

47.     Title 42 U.S.C. §§ 1983 and 1985 bar those operating directly or indirectly under color of state law to deprive one of its citizens equal privileges and immunities under the law or equal protection of the laws.   The equal protection clause of the United States Constitution, the Due Process Clause of the U.S. Constitution, and the Free Speech/Assembly Clause of the U.S. Constitution provides privileges and immunities to all U.S. citizens.  Those protections are made applicable to the state and state actors by the Fourteenth Amendment of the U.S. Constitution.

48.     The Defendants, and each of them, herein engaged in a conspiracy, combination and concerted plan to deprive Plaintiff of his equal protection rights, due process, free speech and assembly rights under the color of state law as described in ¶¶ 15- 45, above.

49.     Defendants committed numerous overt acts in furtherance of the conspiracy, as stated, and incorporated herein as though fully set forth, the overt acts described in ¶¶ 22-24, 26-29 (and its subparagraphs), 30, 31 (and its subparagraphs), and 32.  Said overt acts in furtherance of the conspiracy are continuing.

50.     Plaintiff suffered injury by said conspiracy of the Defendants and each of the overt acts as more fully alleged above, with all of said paragraphs incorporated herein as though fully set forth.

51.     Based upon the harm inflicted upon Plaintiff, and caused by the Defendants, and as more particularly described in ¶¶ 35 -39, Plaintiff is entitled to compensatory, general and special damages in an amount according to proof, but in excess of the statutory minimum of the superior court.

**FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND CONSPIRACY TO VIOLATE  AGAINST ALL DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS, EQUAL PROTECTION, RETALIATION, DISCRIMINATION; COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS' FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL**

52. The Defendants' conduct was evil, motivated by evil intent, involved reckless and callous indifference to said federally protected rights, which Defendants knew or should have known they were violating as more fully described in ¶¶ 35-40 above. Thus, Plaintiff is entitled to punitive damages in an amount according to proof.

53. Plaintiff is entitled to attorney's fees pursuant: (1) to 42 U.S.C. § 1988; and/or (2) pursuant to the private attorney general theory of CCP § 1021.5, because this action resulted in the enforcement of an important right affecting the public interest, a significant benefit has been conferred on the general public or a large class of persons, especially those in the college or university settings, and otherwise fulfills the requirements of § 1021.5.

## VI.

## SECOND CAUSE OF ACTION

**(Violation of Plaintiff's Free Speech Rights, Civil Rights Pursuant to 42 U.S.C. 1983 v. Defendants Welty, Oliaro, Lopes and Torres)**

54. Plaintiff incorporates by reference, as though fully set forth, ¶¶ 1 - 53 above.

55. Defendants Welty, Oliaro, Lopes and Torres violated Plaintiff's free speech and free association rights, and thus Plaintiff's civil rights for all of the reasons now specifically stated in ¶ 29, subparagraph A, B, C, D, G and I.

56. Plaintiff is entitled to compensatory, general and special damages against each of the Defendants, jointly and severally, in an amount according to proof, but in excess of the statutory minimum jurisdiction of the superior court, and more fully described in ¶¶ 35 through 39 above.

57. For all of the reasons stated above, and now especially ¶¶ 35-40 above, Plaintiff is entitled to punitive damages, jointly and severally, against each of the Defendants, in an amount according to proof.

58. Plaintiff is entitled to attorney's fees pursuant to: (1) 42 U.S.C. § 1988: and/or (2) pursuant to the private attorney general theory of CCP § 1021.5, because this action resulted in the enforcement

47

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
AND CONSPIRACY TO VIOLATE AGAINST ALL
DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,
EQUAL PROTECTION, RETALIATION, DISCRIMINATION;
COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'
FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL

of an important right affecting the public interest, a significant benefit has been conferred on the general public or a large class of persons, especially those in the college or university settings, and otherwise fulfills the requirements of § 1021.5.

## VII.

## THIRD CAUSE OF ACTION

**(Violation of Plaintiff's Equal Protection, Speech and Civil Rights
Pursuant to 42 U.S.C. § 1983 v. Defendants Welty, Oliaro, Lopes and Torres)**

59.     Plaintiff incorporates by reference, as though fully set forth, ¶¶ 1 through 58 above.

60.     Based upon the specific allegation contained in the first and second causes of action above and more specifically the paragraph numbers and incorporated paragraphs of ¶ 53 above, the herein charged Defendants, Welty, Oliaro, Lopes and Torres, violated Plaintiff's equal protection rights guaranteed under the United States Constitution, and in violation of Plaintiff's civil rights discriminating against Plaintiff based upon the content of his speech, and the point of view to which the Defendants disagreed, and that but for Plaintiff's point of view and the contents of Plaintiff's speech, and the denial of Plaintiff's equal protection rights, Defendants never would have reported Plaintiff to the Campus Police, filed reports with the Campus Police, or made false statements to the Campus Police.

61.     Plaintiff is entitled to compensatory, general and special damages against each of the Defendants, jointly and severally, in an amount according to proof, but in excess of the statutory minimum jurisdiction of the superior court, and more fully described in ¶¶ 35 through 39 above.

62.     For all of the reasons stated above, and now especially ¶¶ 35-40 above, Plaintiff is entitled to punitive damages, jointly and severally, against each of the Defendants, in an amount according to proof.

63.     Plaintiff is entitled to attorney's fees pursuant to: (1) 42 U.S.C. § 1988; and/or (2) pursuant to the private attorney general theory of CCP § 1021.5, because this action resulted in the enforcement of an important right affecting the public interest, a significant benefit has been conferred on the general

48

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
AND CONSPIRACY TO VIOLATE  AGAINST ALL
DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,
EQUAL PROTECTION, RETALIATION, DISCRIMINATION;
COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'
FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL

public or a large class of persons, especially those in the college or university settings, and otherwise fulfills the requirements of § 1021.5.

### VIII.

### FOURTH CAUSE OF ACTION

**(Violation of Plaintiff's Free Speech, Equal Protection, and Civil Rights Pursuant to 42 U.S.C. § 1983 v. Defendants Welty, Oliaro and Coon)**

64. Plaintiff incorporates herein ¶¶ 1 through 63 above, as though fully set forth.

65. Based upon what is stated in the first, second and third causes of action, Defendants Coon, Welty and Oliaro, relied upon the false statements of Defendants Torres and Lopes (which Defendants knew were false), violated, and intended to violate, Plaintiff's free speech rights, and by discriminating against Plaintiff because of the exercise of those rights, and as revealed in paragraph 23 above, engaged in the conduct, communications, threats and intimidation to Plaintiff as more specifically described in paragraphs 29 sub-paragraphs I, J, K, L, M, N and O, all of which conduct and action violated Plaintiff's free speech, equal protection and civil rights, prohibited from by 42 U.S.C. § 1983.

66. Plaintiff is entitled to compensatory, general and special damages against each of the Defendants, Welty, Oliaro and Coon jointly and severally, in an amount according to proof, but in excess of the statutory minimum jurisdiction of the superior court, and more fully described in ¶¶ 35 through 39 above.

67. For all of the reasons stated above, and now especially ¶¶ 35-40 above, Plaintiff is entitled to punitive damages, jointly and severally, against each of the Defendants, in an amount according to proof.

68. Plaintiff is entitled to attorney's fees pursuant to: (1) 42 U.S.C. § 1988; and/or (2) pursuant to the private attorney general theory of CCP § 1021.5, because this action resulted in the enforcement of an important right affecting the public interest, a significant benefit has been conferred on the general

**FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND CONSPIRACY TO VIOLATE AGAINST ALL DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS, EQUAL PROTECTION, RETALIATION, DISCRIMINATION; COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS' FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL**

1   public or a large class of persons, especially those in the college or university settings, and otherwise

2   fulfills the requirements of § 1021.5.

3                                          **IX.**

4                               **FIFTH CAUSE OF ACTION**

5           **(Violation of Plaintiff's Equal Protection/Speech and Civil Rights**
            **Pursuant to 42 U.S.C. § 1983 v. Defendants Welty, Oliaro and Coon)**
6

7           69.    Plaintiff incorporates herein the allegations of paragraphs 1 through 68 above, as though

8   fully set forth.

9           70.    For all of the reasons alleged in the third and fourth causes of action above, and also the

10  specific paragraph references stated in paragraph 65 of the fourth causes of action, Defendants Welty,

11  Oliaro and Coon violated Plaintiff's equal protection and free speech rights, in that if Plaintiff's speech

12  content and actions had been consistent with the Defendants' policies, culture (as elsewhere described

13  above in this complaint) and political correctness, and whereas if Plaintiff were espousing liberal, left-

14  leaning views, Defendants would not have taken the actions they did as described in the immediately

15  preceding four causes of action and the specific paragraphs incorporated therein, but instead, the actions

16  taken against Plaintiff were to discriminate against Plaintiff for espousing his contrary beliefs, point of

17  view and speech and challenging the Defendants regarding the same.

18          71.    Plaintiff is entitled to compensatory, general and special damages against each of the

19  Defendants, jointly and severally, in an amount according to proof, but in excess of the statutory

20  minimum jurisdiction of the superior court, and more fully described in ¶¶ 35 through 39 above.

21          72.    For all of the reasons stated above, and now especially ¶¶ 35-40 above, Plaintiff is entitled

22  to punitive damages, jointly and severally, against each of the Defendants, in an amount according to

23  proof.

24          73.    Plaintiff is entitled to attorney's fees pursuant to: (1) 42 U.S.C. § 1988; and/or (2) pursuant

25  to the private attorney general theory of CCP § 1021.5, because the action resulted in the enforcement

26

27                                          50

28  **FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS**
    **AND CONSPIRACY TO VIOLATE  AGAINST ALL**
    **DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,**
    **EQUAL PROTECTION, RETALIATION, DISCRIMINATION;**
    **COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'**
    **FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL**

1   of an important right affecting the public interest, a significant benefit has been conferred on the general

2   public or a large class of persons, especially those in the college or university settings, and otherwise

3   fulfills the requirements of § 1021.5.

**X.**

**SIXTH CAUSE OF ACTION**

**(Violation of Plaintiff's Due Process, Free Speech, Equal Protection and
Civil Rights Pursuant to 42 U.S.C. § 1983 v. Defendants Welty, Oliaro and Coon)**

74.      Plaintiff incorporates herein the allegations contained paragraphs 1 through 73 above, as

though fully set forth.

75.      As set forth in ¶¶ 29I through O, above the procedure that Defendant Coon afforded – and

did not afford – to Plaintiff in Defendant Coon's initial meeting with Plaintiff; (1) her proposal as a

"settlement agreement" on sanctions, and her assumption that Plaintiff violated the Student Code of

Conduct and/or any other rules or regulations; (2) without getting Plaintiff's full side of the events in

question; (3) without reviewing the video tape; (4) without requesting the follow-up reports conducted

by the Fresno Campus Police; and (5) Defendants Oliaro, Welty and Coon's denial of Plaintiff's right to

have an attorney present during those meetings, violated Plaintiff's Due Process rights and/or Plaintiff's

free speech rights and/or equal protection rights as Defendant Welty's rules discriminated against who

Plaintiff could have as a his advisor (anyone but an attorney), and Defendants Oliaro and Welty also knew

that was a violation of Plaintiff's Due Process and speech rights, and thus Plaintiff's civil rights especially

when the Defendants did not want to view the "best evidence" of the true events by reviewing the video

tape of the event as described in paragraphs 29A through H above.  Plaintiff's due process and equal

protection rights were further violated because it was discriminatory prosecution, and not for a conduct

code alleged violation, but to instead punish Plaintiff for exercising his conservative free speech rights

which the Defendants despised and endeavored to punish.

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
AND CONSPIRACY TO VIOLATE  AGAINST ALL
DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,
EQUAL PROTECTION, RETALIATION, DISCRIMINATION;
COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'
FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL

76.     Plaintiff is entitled to compensatory, general and special damages against each of the Defendants, jointly and severally, in an amount according to proof, but in excess of the statutory minimum jurisdiction of the superior court, and more fully described in ¶¶ 35 through 39 above.

77.     For all of the reasons stated above, and now especially ¶¶ 35-40 above, Plaintiff is entitled to punitive damages, jointly and severally, against each of the Defendants, in an amount according to proof.

78.     Plaintiff is entitled to attorney's fees pursuant to: (1) 42 U.S.C. § 1988; and/or (2) pursuant to the private attorney general theory of CCP § 1021.5, because the action resulted in the enforcement of an important right affecting the public interest, a significant benefit has been conferred on the general public or a large class of persons, especially those in the college or university settings, and otherwise fulfills the requirements of § 1021.5.

## XI.

## SEVENTH CAUSE OF ACTION

**(Violation of Plaintiff's Due Process/Hearing, Free Speech, and Equal
Protection Rights Pursuant to 42 U.S.C. § 1983 v. Defendants Welty, Oliaro and Coon)**

79.     Plaintiffs incorporate herein the allegations of paragraphs 1 through 78 above as though fully set forth.

80.     At the hearing on September 13, 2011 Defendants Welty, Oliaro and Coon refused to allow Plaintiff to be accompanied by his attorney who desired to counsel Plaintiff, insure that Plaintiff's Due Process rights were protected during the hearing, to advise Plaintiff regarding examinations of witnesses and to otherwise afford Plaintiff the right to speak to his attorney.  Defendant Welty, citing his own executive order, precluded Plaintiff from having an attorney which denied Plaintiff his free speech and Due Process rights, and his equal protection rights, as Defendant Welty's executive order allowed Plaintiff to have any "advisor" he wanted, except an attorney, as set forth in detail in ¶¶ 29L through Q, above.  Further, the proceeding violated Plaintiff's due process and equal protection rights because

52

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
AND CONSPIRACY TO VIOLATE  AGAINST ALL
DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,
EQUAL PROTECTION, RETALIATION, DISCRIMINATION;
COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'
FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL

Plaintiff was only subjected to this hearing and potential discipline because he was an outspoken conservative and was being punished for simply asking Defendants Torres and Lopes a question about the "poem," not because he was intimidating or threatening  In addition, other Due Process rights of Plaintiff were violated by these Defendants, Welty, Oliaro and Coon, including:

> A.    Refusing to allow the Plaintiff to put on any testimony or cross-examine any witness regarding any date other than the events of May 11, which would show their motive, prejudice and animus towards Plaintiff;

> B.    Refusing to play the video tape of the incident of May 11, 2011;

> C.    Refusing to allow the Plaintiff to cross-examine Defendants Gonzalez, Torres and Lopes regarding the actual video tape;

> D.    Allowing Defendant Coon to ask witnesses about events other than May 11, 2011, but precluding Plaintiff from doing the same;

> E.    Allowing Defendant Gonzalez to testify as a "witness" at the hearing when she never witnessed any of the events;

> F.    Refusing to allow Detective Manucharyan to testify since he had viewed the video tape, was aware that Defendants Lopes and Torres statements to the Campus Police were not accurate, and that their alleged facts were not borne out by the video tape, and that when he re-interviewed them their statements had been inconsistent;

> G.    Allowing the alleged "prosecutor", Defendant Coon to direct the hearing when she had already determined what sanctions she would impose on Plaintiff;

> H.    Refusing to allow Plaintiff copies of the statements that Torres and Lopes had provided to the Campus Police, even though they and Defendant Coon and Mr. Freeman had copies of said statements;

> I.    The Hearing Officer Freeman refusing to answer Plaintiff's questions about whether he had any relationship with Defendants Torres, Lopes, Coon or the CLS Department;

53

1    J.    Freeman requesting that Plaintiff agree to keep the hearing confidential;

2    K.    The Hearing Office directive that Plaintiff could not record the hearing, and could

3    not receive a copy of the hearing, claiming it was University property;

4    L.    Freeman refusing to state whether or not he had read of any of Plaintiff's political

5    positions or read any newspaper articles regarding Plaintiff; and

6    M.    The Hearing Officer Freeman and Coon refusing to review the video tape either

7    prior to the hearing or at the hearing;

8    81.    Plaintiff is entitled to compensatory, general and special damages against each of the

9    Defendants, jointly and severally, in an amount according to proof, but in excess of the statutory

10   minimum jurisdiction of the superior court, and more fully described in ¶¶ 35 through 39 above.

11   82.    For all of the reasons stated above, and now especially ¶¶ 35-40 above, Plaintiff is entitled

12   to punitive damages, jointly and severally, against each of the Defendants, in an amount according to

13   proof.

14   83.    Plaintiff is entitled to attorney's fees pursuant to: (1) 42 U.S.C. § 1988; and/or (2) pursuant

15   to the private attorney general theory of CCP § 1021.5, because the action resulted in the enforcement

16   of an important right affecting the public interest, a significant benefit has been conferred on the general

17   public or a large class of persons, especially those in the college or university settings, and otherwise

18   fulfills the requirements of § 1021.5.

19                              **XII.**

20                   **EIGHTH CAUSE OF ACTION**

21   **(Violation of Due Process, Assembly, Association and Free Speech
     Rights and Rights to Redress Grievances, Civil Rights Pursuant to 42 U.S.C.**

22   **§ 1983 v. Defendants Oliaro and Welty)**

23   84.    Plaintiff incorporated herein the allegations of paragraphs 1 through 83 above.

24   85.    As further alleged in paragraphs 29 R through T, above Defendants Welty and Oliaro

25   denied Plaintiff his Due Process, rights, assembly, association and free speech rights and rights to redress

26

27                              54

28   **FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
     AND CONSPIRACY TO VIOLATE  AGAINST ALL
     DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,
     EQUAL PROTECTION, RETALIATION, DISCRIMINATION;
     COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'
     FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL**

grievances, by Defendant Oliaro issuing his decision as to sanctions on September 30, 2011, and violating all of the following Due Process principles and other named rights of Plaintiff as follows:

A.   Refusing to allow Plaintiff to review the Hearing Officer's (Freeman's) report from that September 13 hearing so the Plaintiff could be provided an opportunity to argue or contest the matter before the ultimate sanction was issued by Defendant Oliaro;

B.   Defendant Oliaro, in his "decision" penalizing Plaintiff and retaliating against Plaintiff and attempting to silence Plaintiff because of Plaintiff's outspoken conservative points of view and Plaintiff's objection to the left-leaning culture at Fresno State and especially at CLS, while only giving lip service to the fact and law that "freedom of speech is highly valued on the campus..." (as more particularly stated in paragraph 29 R above), and for a discriminatory purpose based on Plaintiff's speech, and not because of any alleged conduct code violation;

C.   By finding, with no valid or substantial evidence at all, that Plaintiff endangered the health or safety of members of the campus community, and which was simply contrived in order to punish Plaintiff for his speech;

D.   By retaliating and punishing Plaintiff for seeking and pursuing his matter to a judicial hearing, by Defendant Oliaro increasing the penalty which Defendant Coon had originally recommended, and increasing the penalty that even the Hearing Officer, Freeman, recommended, and by refusing to allow the Plaintiff to respond prior to Defendant Oliaro's discipline order;

E.   By imposing probation through May 20, 2012 on the Plaintiff which precluded Plaintiff from having free access to the second floor of the Social Science Building or being within 100 feet of the CLS faculty or staff or their classrooms or their offices;

F.   By issuing the order of probation, precluding Plaintiff from seeking any office with ASI, and precluding Plaintiff from being the President or Treasurer of his own club on campus, as more fully described in paragraphs 29 S and T above;

**FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND CONSPIRACY TO VIOLATE  AGAINST ALL DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS, EQUAL PROTECTION, RETALIATION, DISCRIMINATION; COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS' FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL**

G.      By using the entire process to retaliate against Plaintiff and punish Plaintiff for exercising his free speech rights, and rights to redress grievances and then claiming that Plaintiff should accept the sanction in the process as an "educational" experience when in fact it was intended to punish Plaintiff for exercising his free speech rights and not for any conduct code violation; and

H.      Depriving Plaintiff his free speech rights, access rights, association rights, travel rights, campaigning and petitioning rights by precluding Plaintiff from conducting any activities on the second floor of the Social Science Building unless he had a class there or was there on official business.

86.     All of this violated Plaintiff's Due Process rights, travel rights, free speech and expression rights, and rights to petition for redress of grievances, and Plaintiff's Due Process rights.  Plaintiff was being singled out for retribution because he dared to disagree with the Defendants' left-leaning policy, and those of other administrators and faculty of Fresno State, and especially those in the Social Science Department and the CLS Department and because Plaintiff insisted on proceeding through the hearing and insisting upon his right to an attorney and Due Process.

87.     Plaintiff is entitled to compensatory, general and special damages against each of the Defendants, jointly and severally, in an amount according to proof, but in excess of the statutory minimum jurisdiction of the superior court, and more fully described in ¶¶ 35 through 39 above.

88.     For all of the reasons stated above, and now especially ¶¶ 35-40 above, Plaintiff is entitled to punitive damages, jointly and severally, against each of the Defendants, in an amount according to proof.

89.     Plaintiff is entitled to attorney's fees pursuant to: (1) 42 U.S.C. § 1988; and/or (2) pursuant to the private attorney general theory of CCP § 1021.5, because the action resulted in the enforcement of an important right affecting the public interest, a significant benefit has been conferred on the general

56

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
AND CONSPIRACY TO VIOLATE  AGAINST ALL
DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,
EQUAL PROTECTION, RETALIATION, DISCRIMINATION;
COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'
FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL

public or a large class of persons, especially those in the college or university settings, and otherwise fulfills the requirements of § 1021.5.

### XIII.

### NINTH CAUSE OF ACTION

**(Violation of Free Speech, Due Process, Civil and Fourth Amendment Rights Pursuant to 42 U.S.C. § 1983 (Events of December 1, and 2, 2011) v. Defendants Welty, Oliaro, Gonzales and Jendian)**

90.     Plaintiff incorporates herein the allegations in ¶ 1 through 89, as though fully set forth.

90.     As more fully alleged in ¶¶ 31 and 31 A through F, Plaintiff's free speech, due process, travel and equal protection rights were violated by these charged Defendants in the following way, and while Plaintiff was adhering to and complying with the sanctions imposed by Defendants Welty and Oliaro:

A.      While rightfully in the second floor of the Social Science Building completing a work assignment, Defendant Gonzales confronted Plaintiff, erroneously claimed that Plaintiff was not allowed to be there, and then Defendant Gonzales called Campus Police who confronted Plaintiff and followed Plaintiff around for approximately 15 to 20 minutes until Plaintiff left;

B.      On the next day on December 2, 2011, Plaintiff returned to the second floor of the Social Science Building to continue his class ordered assignment in that building, when Defendant Gonzales again loudly confronted Plaintiff, loudly stated that he was not permitted to be there, and when Plaintiff brought out his video camera and began recording Gonzales reached out and made physical contact with Plaintiff and his camera, while Defendant Gonzales immediately requested bystanders to call the Campus Police erroneously stating that Plaintiff was violating the sanctions imposed upon him (when Plaintiff was not);

C.      That Defendant Jendian also appeared and loudly confronted Plaintiff, and pursued Plaintiff and closely stalked Plaintiff mere inches away as Plaintiff's video taping was occurring, and then fraudulently stated that Plaintiff was about ready to hit him (Jendian) with his video

57

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
AND CONSPIRACY TO VIOLATE  AGAINST ALL
DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,
EQUAL PROTECTION, RETALIATION, DISCRIMINATION;
COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'
FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL

camera when Plaintiff was attempting to back-up in the hallway to avoid Defendant Jendian's aggressive pursuit of Plaintiff;

D.     That while what was occurring as stated in the immediate preceding paragraph, the Campus Police arrived, Campus Police confronted and detained Plaintiff, even though Plaintiff stated that he was allowed to be there as he had business there;

E.     That while Plaintiff was being detained by police, Defendant Jendian falsely advised the Campus Police that Plaintiff was accosting and threatening Jendian and that Jendian feared for his safety, and the Campus Police continued to detain Plaintiff while they pursued their investigation.  Defendant Jendian's actions were not motivated by anything other than to punish Plaintiff because of Defendant Jendian's contempt for, and animus against Plaintiff because of Plaintiff's outspoken speech as described herein;

F.     That a short time later when Plaintiff's counsel arrived and showed the Campus Police Defendant Oliaro's sanction order which clearly showed that Plaintiff had a right to be in the building, and showed the Campus Police the email instructions by one of Plaintiff's instructors advising him to conduct an ADA study of the Social Science Building, Campus Police advised that they had never received a copy of Defendant Oliaro's sanction order, and therefore did not know that sanction order had exceptions for Plaintiff to be doing exactly what Plaintiff was doing, but that they assumed and Defendant Gonzales presumed that Plaintiff was not suppose to be in that building whatsoever;

G.     That soon after December 2, 2011, Plaintiff provided to the Campus Police the actual video tape of the events which caused the Campus Police to realize that Defendants Gonzales and Jendian were the aggressors and that they did not tell the truth;

H.     That Defendants Gonzales and Jendian made false reports to the Campus Police solely in order to retaliate and punish Plaintiff for his outspoken views, and to deny Plaintiff due

58

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
AND CONSPIRACY TO VIOLATE  AGAINST ALL
DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,
EQUAL PROTECTION, RETALIATION, DISCRIMINATION;
COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'
FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL

process, and to cause the unlawful seizure of Plaintiff's person and property by the Campus Police, in violation of Plaintiff's Fourth Amendment rights;

I.    That Defendants Oliaro and Welty knew or should have known that without the Campus Police receiving a copy of the sanction order, so the Campus Police could determine what the exceptions were, and that Plaintiff was lawfully in the Social Science Building and not in violation of Oliaro's sanction order, deprived Plaintiff of his due process rights and caused the unlawful seizure of Plaintiff's person and property, in violation of his Fourth Amendment rights;

J.    That neither Defendants Gonzales nor Jendian were ever reprimanded for their aggression towards Plaintiff and hostility towards Plaintiff, nor for the violation of his rights;

91.    Defendants Welty, Oliaro, Gonzales and Jendian took these actions to further punish Plaintiff and to retaliate and discriminate against him because of his conservative points of view and his objections to the left leaning policies and culture of the administration, the Sociology Department and the CLS Department.  This also denied Plaintiff his equal protection rights because when radical left-leaning organizations like the Brown Berets and MEChA violated Fresno State code of conduct by occupying the library and Dr. Oliaro's office, refusing to disperse when Campus Police instructed them to, and further refused to disperse when the closing time for those buildings occurred, and interfered with all other students' desire to come and go into those buildings, none of those individuals were sanctioned or placed on probation.

92.    Plaintiff is entitled to compensatory, general and special damages against each of the Defendants, jointly and severally, in an amount according to proof, but in excess of the statutory minimum jurisdiction of the superior court, and more fully described in ¶¶ 35 through 39 above.

93.    For all of the reasons stated above, and now especially ¶¶ 35-40 above, Plaintiff is entitled to punitive damages, jointly and severally, against each of the Defendants, in an amount according to proof.

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
AND CONSPIRACY TO VIOLATE  AGAINST ALL
DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,
EQUAL PROTECTION, RETALIATION, DISCRIMINATION;
COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'
FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL

94.     Plaintiff is entitled to attorney's fees pursuant to: (1) 42 U.S.C. § 1988; and/or (2) pursuant to the private attorney general theory of CCP § 1021.5, because the action resulted in the enforcement of an important right affecting the public interest, a significant benefit has been conferred on the general public or a large class of persons, especially those in the college or university settings, and otherwise fulfills the requirements of § 1021.5.

## XIV.

## **TENTH CAUSE OF ACTION**

### **(Violation of Plaintiff's Civil Rights, Free Speech and Association, Due Process, Equal Protection Pursuant to 42 U.S.C. § 1983 v. Defendants Welty and Oliaro)**

95.     Plaintiff incorporates herein the allegations contained in ¶¶ 1 through 94 above, as though fully set forth.

96.     Following the events as alleged in the ninth cause of action above, and as more fully described in the statement of facts relating to those events, Defendant Oliaro, having been contacted by Defendants Gonzales, and upon information and belief, the Campus Police and Jendian, Defendant Oliaro retaliated again against Plaintiff by sending a letter to Plaintiff stating that while Plaintiff had not violated the terms of his probation and sanction order by being on the second floor of the Social Science Building on December 1 and 2, 2011, as he did have business there, Defendant Oliaro further retaliated by stating that anytime that Plaintiff was going to be on the second floor of that Social Science Building he had to provide 24 hours notice to Defendant Gonzales "so that there will be no confusion regarding your permission to be on the second floor."  Defendant Oliaro did not reprimand Defendants Jendian and Gonzales, did not apologize to the Plaintiff, but imposed additional sanctions on Plaintiff by requiring 24 hours notice to Defendant Gonzales who had been shown to be a person interested in punishing and retaliating against Plaintiff.  This violated Plaintiff's rights to due process, equal protection and travel as stated above, and was done under color of law, and Defendants knew or should have known that it violated Plaintiff's rights as described above.

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
AND CONSPIRACY TO VIOLATE  AGAINST ALL
DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,
EQUAL PROTECTION, RETALIATION, DISCRIMINATION;
COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'
FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL

97.     Plaintiff is entitled to compensatory, general and special damages against each of the Defendants, jointly and severally, in an amount according to proof, but in excess of the statutory minimum jurisdiction of the superior court, and more fully described in ¶¶ 35 through 39 above.

98.     For all of the reasons stated above, and now especially ¶¶ 35-40 above, Plaintiff is entitled to punitive damages, jointly and severally, against each of the Defendants, in an amount according to proof.

99.     Plaintiff is entitled to attorney's fees pursuant to: (1) 42 U.S.C. § 1988; and/or (2) pursuant to the private attorney general theory of CCP § 1021.5, because the action resulted in the enforcement of an important right affecting the public interest, a significant benefit has been conferred on the general public or a large class of persons, especially those in the college or university settings, and otherwise fulfills the requirements of § 1021.5.

**XV.**

**ELEVENTH CAUSE OF ACTION**

**(Violation of Plaintiff's Civil Rights, Free Speech, Assembly, Travel and Due Process Rights Pursuant to 42 U.S.C. § 1983 v. Defendants Welty, Gonzales and Oliaro)**

100.     Plaintiff incorporates herein the allegations of ¶¶ 1 through 99 above, as though fully set forth.

101.     Following all of the events described in the previous causes of action, for the Spring Semester, Plaintiff had enrolled in two courses, History 186 and Economics 181 whose classes were beginning in January of 2012, and were one class per day on the second floor of the Social Science Building, and the enrollment and registration records showed that Plaintiff was enrolled in those two classes.  On Tuesday, January 17, 2012, Plaintiff's counsel contacted Campus Police to abide by newly imposed "24 hour notice rule" to remind the Campus Police that Plaintiff would be attending classes in that building for the Spring Semester and on the days and times for each week.  As more fully described in ¶ 31G above, on the first day of said class, Plaintiff went to the second floor not that long before class,

61

1 sat at a table at the end of the hallway to eat his lunch before he went to class.  As Plaintiff was eating,

2 a CLS professor notified Plaintiff that he was not allowed to be there.  That professor contacted Gonzales

3 who then called Campus Police to notify them that Plaintiff was there and was not allowed to be there

4 and wanted the Campus Police to act.  The Campus Police already knew Plaintiff was permitted to be

5 there, but, upon information and belief, Defendant Gonzales notified Defendant Oliaro, to further retaliate

6 and punish Plaintiff for all of the reasons stated above.

7        102.    Defendant Oliaro then sent a letter to Plaintiff on January 24, 2012, condemning and

8 retaliating against Plaintiff, by stating that Plaintiff had to abide by the 100 foot distance from the CLS

9 faculty or staff, offices or classrooms until he was actually attending said class, but did not advise, and

10 refused to respond to questions pertaining to, when is it too early to go to class, how long after class ends

11 must Plaintiff travel beyond the 100 foot barrier, and challenging Defendant Oliaro for Oliaro constantly

12 providing a moving target as to the sanction order, solely to retaliate and punish Plaintiff who was and

13 had been in compliance with said sanction order.  This violated Plaintiff's due process rights, was

14 retaliation for Plaintiff exercising his travel rights, and again in retaliation for Plaintiff exercising his free

15 speech and free expression rights and his right to assembly because it was solely done for retaliation

16 because of the points of view expressed by Plaintiff.

17        103.    Because of the immense hostility against Plaintiff, and Defendants Welty's and Oliaro's

18 contempt for Plaintiff because of Plaintiff's outspoken political, social and cultural views, Defendants

19 Welty and Oliaro created a culture amongst those at the Sociology Department and especially the CLS

20 Department which allowed the other named Defendants to feel emboldened in dispensing their own

21 violation of Plaintiff's rights as described above.  Defendants Welty and Oliaro nurtured, propagandized

22 and fomented the left-leaning progressives and even the radical groups on campus, and were adverse to

23 points of view by Plaintiff, and denounced any debate by Plaintiff on the same, and let it be known to not

24 only Plaintiff, but the other Defendants, that Plaintiff's points of view would not be tolerated and would

25 be punished.  The conduct of the Defendants were violative of Plaintiff's free speech, travel, due process

26

27                                            62

28 **FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS**
   **AND CONSPIRACY TO VIOLATE  AGAINST ALL**
   **DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,**
   **EQUAL PROTECTION, RETALIATION, DISCRIMINATION;**
   **COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'**
   **FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL**

1  and equal protection rights, but said conduct by the Defendant violated the California Constitution and

2  Fresno State's own policy.

3       104.  Defendants Welty and Oliaro used campus equipment, stationary and their soap-boxes to

4  push for the passage of the DREAM ACT, and to lobby for the passage of Governor Brown's Proposition

5  30 tax increase for education, and detested Plaintiff because of Plaintiff's outspoken contrary viewpoints.

6  Plaintiff was therefore singled out for retribution, retaliation, ridicule and punishment, and so as to warn

7  and spread the word around campus in order to chill the speech of other or future potential actors or

8  speakers like Plaintiff who had similar view points as Plaintiff, all as further described in ¶ 36, and caused

9  further damage to Plaintiff as described in ¶ 37 above.

10       105.  Defendants Welty and Oliaro directed, or had directed, that all of Plaintiff's postings on

11  the Fresno State Facebook Page, and the Fresno State Alumni Facebook Page be removed if any of the

12  postings were contrary to their liberal agenda and this is still occurring as of the second week in

13  November, 2012.

14       106.  Plaintiff is entitled to compensatory, general and special damages against each of the

15  Defendants, jointly and severally, in an amount according to proof, but in excess of the statutory

16  minimum jurisdiction of the superior court, and more fully described in ¶¶ 35 through 39 above.

17       107.  For all of the reasons stated above, and now especially ¶¶ 35-40 above, Plaintiff is entitled

18  to punitive damages, jointly and severally, against each of the Defendants, in an amount according to

19  proof.

20       108.  Plaintiff is entitled to attorney's fees pursuant to: (1) 42 U.S.C. § 1988; and/or (2) pursuant

21  to the private attorney general theory of CCP § 1021.5, because the action resulted in the enforcement

22  of an important right affecting the public interest, a significant benefit has been conferred on the general

23  public or a large class of persons, especially those in the college or university settings, and otherwise

24  fulfills the requirements of § 1021.5.

25

26

                                            63

27

28  **FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND CONSPIRACY TO VIOLATE AGAINST ALL DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS, EQUAL PROTECTION, RETALIATION, DISCRIMINATION; COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS' FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL**

## XVI.

## **JURY TRIAL**

109   Plaintiff demands a jury trial.

## XVII.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

A.     Under each, and every cause of action stated above, and against each Defendant charged in each of those causes of action, compensatory damages in an amount according to proof, but in excess of the minimum statutory jurisdictional amounts for the superior court;

B.     Under each, and every cause of action stated above, and against each Defendant charged in each of those causes of action, general damages for humiliation, mental anguish, embarrassment, emotional distress, invasion of privacy, sleeplessness, stomach aches, head aches, heart palpitations, anxiety, emotional distress, depression, anger, extreme worry, loneliness, difficulty concentrating, and interference with Plaintiff's free speech and association rights, equal protection, due process, fourth amendment and travel rights in an amount according to proof, but in excess of the minimum statutory jurisdictional amounts for the superior court;

C.     Under each, and every cause of action state above, and against each Defendant charged in each of those causes of action, special damages, as alleged in ¶ 39 above, in an amount according to proof;

D.     Under each, and every cause of action stated above, and against each Defendant charged in each of those causes of action, punitive and exemplary damages against each of the Defendants in an amount according to proof.

E.     Under each of the causes of action, attorney's fees and costs in an amount according to proof, and pursuant to 42 U.S.C. § 1988, and/or through the Private Attorney General Procedures of CCP § 1021.5;

64

**FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
AND CONSPIRACY TO VIOLATE  AGAINST ALL
DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,
EQUAL PROTECTION, RETALIATION, DISCRIMINATION;
COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'
FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL**

1         F.       Prejudgment interest pursuant to California Code of Civil Procedure;

2         G.      For equitable and declaratory relief, an order by the court that the Defendants must

3 cease and desist violating Plaintiff's right complained of herein;

4         H.      A jury trial on each cause of action; and

5         I.       As to each and all causes of action, such other relief deemed just and proper.

DATED: January14, 2013

/S/ BRIAN C. LEIGHTON
BRIAN C. LEIGHTON, legal counsel
for Plaintiff NEIL O'BRIEN

65

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
AND CONSPIRACY TO VIOLATE  AGAINST ALL
DEFENDANTS (42 U.S.C. § 1983); FREE SPEECH, DUE PROCESS,
EQUAL PROTECTION, RETALIATION, DISCRIMINATION;
COMPENSATORY AND PUNITIVE DAMAGES; ATTORNEYS'
FEES; DECLARATORY AND EQUITABLE RELIEF; JURY TRIAL