1   KAMALA D. HARRIS, State Bar No. 146672
    Attorney General of California
2   JOEL A. DAVIS, State Bar No. 109290
    Supervising Deputy Attorney General
3   MOLLY S. MURPHY, State Bar No. 149907
    Deputy Attorney General
4    300 South Spring Street, Suite 1702
     Los Angeles, CA  90013
5    Telephone:  (213) 897-6024
     Fax:  (213) 897-2810
6    E-mail:  Molly.Murphy@doj.ca.gov
    *Attorneys for Defendants Dr. John Welty, Dr. Paul*
7   *Oliaro, Dr. Carolyn Coon, Dr. Victor Torres, Dr.*
    *Maria Lopes, Dr. Luz Gonzalez and Dr. Matthew*
8   *Jendian*

9

IN THE UNITED STATES DISTRICT COURT

10

FOR THE EASTERN DISTRICT OF CALIFORNIA

11

12

13

| | |
|---|---|
| 14   **NEIL O'BRIEN, AN INDIVIDUAL,** | 1:12-cv-02017-AWI-SAB |
| 15                               Plaintiff, | |
| 16         **v.** | **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| 17   **DR. JOHN WELTY, DR. PAUL M.** | |
| 18   **OLIARO, DR. CAROLYN V. COON, DR. VICTOR M. TORRES, DR. MARIA** | [Notice of Motion and Motion and Appendix of Authority filed herewith] |
| 19   **LOPES, DR. LUZ GONZALEZ, DR. MATTHEW JENDIAN, ALL IN THEIR** | Date: March 4, 2013 |
| 20   **PERSONAL CAPACITIES AND DOES 1 THROUGH 25, INCLUSIVE,** | Time: 1:30 p.m. |
| 21                               Defendants. | Courtroom: 2, Eighth Floor |
| 22 | Judge: Hon. Anthony W. Ishii |
| | Trial Date: None |
| | Action Filed:  11/14/2012 |

23

24        Defendants Dr. John Welty, Dr. Paul Oliaro, Dr. Carolyn Coon, Dr. Victor Torres, Dr.

25   Maria Lopes, Dr. Luz Gonzalez and Dr. Matthew Jendian hereby file their memorandum of points

26   and authorities in support of their motion to dismiss plaintiff's first amended complaint without

27   leave to amend.

28

1

## TABLE OF CONTENTS

2

Page

3

I.   Introduction .................................................................................................. 1

II.   Facts ............................................................................................................. 2

A.   Claims against Dr. Torres and Dr. Lopes .................................................. 2

B.   Claims against Dr. Coon ............................................................................. 3

C.   Claims against Dr. Welty and Dr. Oliaro ................................................... 3

D.   Claims against Dr. Gonzalez ...................................................................... 5

E.   Claims against Dr. Jendian .......................................................................... 6

F.   Plaintiff's damages claims ........................................................................... 6

III.   Standard for motion to dismiss .................................................................... 6

IV.   Plaintiff fails to allege a constitutional violation ......................................... 7

A.   Plaintiff received sufficient due process in his disciplinary
proceedings .................................................................................................. 7

B.   O'Brien's First Amendment rights were not violated ................................. 9

1.   The Discipline was appropriate ......................................................... 9

2.   The Discipline was not retaliatory .................................................. 10

C.   O'Brien's December 1 and 2, 2011 encounters with faculty did not
violate his constitutional rights .................................................................. 11

D.   The clarification of the sanctions order did not violate O'Brien's
constitutional rights ................................................................................... 12

E.   Alleged harm to reputation is not a basis for a 1983 claim ....................... 13

F.   O'Brien's constitutional rights were not violated when he was
barred from applying for student government positions and leading
a club ......................................................................................................... 13

G.   There was no unconstitutional infringement on O'Brien's right to
travel .......................................................................................................... 14

H.   There was no constitutional violation with O'Brien's public records
act requests ................................................................................................ 15

I.   There was no selective enforcement ......................................................... 15

V.   Qualified immunity defeats claims against all defendants .......................... 16

VI.   O'Brien cannot plead a conspiracy ............................................................ 18

VII.   Drs. Welty and Oliaro are not liable for subordinates' alleged actions ...... 19

VIII.   Drs. Torres and Lopes did not act under color of state law ....................... 20

IX.   O'Brien 's claims for private Attorney General damages fail ..................... 21

X.   Leave to amend should be denied .............................................................. 22

XI.   Conclusion ................................................................................................. 22

28

i

1

# TABLE OF AUTHORITIES

2

<u>Page</u>

3

4

CASES

5

*Ashcroft v. Iqbal*
    556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ................................................ 6, 19

6

7

*Ashelman v. Pope*
    793 F.2d 1072 (9th Cir. 1986) ........................................................................................... 8

8

9

*Bethel School Dist. v. Fraser*
    478 U.S. 675, 106 S. Ct. 3159, 92 L. Ed. 2d 549 (1986) ................................................... 9

10

*Braswell v. Bd. of Regents*
    369 F.Supp.2d 1371 (N.D. Georgia 2005) ................................................................... 15, 16

11

12

*Briscoe v. LaHue*
    460 U.S. 325, 103 S. Ct. 1108, 75 L. Ed. 2d 96 (1983) ..................................................... 7

13

*Bull v. Dardanelle Public School Dist.*
    745 F.Supp. 1455 (E.D. Ark. 1990) ............................................................................. 13, 14

14

15

*Butz v. Economou*
    438 U.S. 478, 98 S. Ct. 2894, 57 L. Ed. 2d 895 (1978) ................................................. 7, 8

16

17

*Campbell v. Burt*
    141 F.3d 927 (9th Cir. 1998) ........................................................................................ 15, 21

18

*City of Cleburne v. Cleburne Living Center*
    473 U.S. 432, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985) ................................................. 15

19

20

*Corales v. Bennett*
    567 F.3d 554 (9th Cir. 2009) ........................................................................................ 10, 19

21

22

*DeGrassi v. City of Glendora*
    207 F.3d 643 (9th Cir. 2000) ............................................................................................ 18

23

*DeSyllas v. Bernstine*
    351 F.3d 934 (9th Cir. 2003) ............................................................................................ 11

24

25

*Flint v. Dennison*
    488 F.3d 816 (9th Cir. 2007) ............................................................................................ 13

26

27

*Frio v. Superior Court*
    203 Cal.App.3d 1480, 1488 (1988) .................................................................................. 11

28

ii

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3

*Gorman v. University of Rhode Island*
      837 F.2d 7 (1st Cir. 1988) ................................................................................. 8, 9

4

5

*Goss v. Lopez*
      419 U.S. 565, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975) ...................................... 7, 19

6

*Hansen v. Black*
      885 F.2d 642, 645-646 (9th Cir. 1989) ............................................................. 16

7

8

*Harlow v. Fitzgerald*
      457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982) ..................................... 13

9

*Heck v. Humphrey*
      512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994) .................................... 8

10

*Hill v. Clovis*
      2012 WL 787609 (E.D.Cal. 2012) ..................................................................... 16

11

12

*Hughes v. Meyer*
      880 F.2d 967 (7th Cir. 1989) .............................................................................. 20

13

14

*Krainski v. Nevada ex rel. Board of Regents*
      616 F.3d 963 (9th Cir. 2010) ................................................................. 16, 17, 19

15

*Lavine v. Blaine School Dist.*
      257 F.3d 981 (9th Cir. 2001) ........................................................................ 9, 19

16

17

*Martinez v. State of California*
      444 U.S. 277, 100 S. Ct. 553, 62 L. Ed. 2d 481 (1980) ................................... 15, 19

18

19

*Morse v. Frederick*
      551 U.S. 393, 127 S. Ct. 2618, 168 L. Ed. 2d 290 (2007) ................................... 18

20

*New Jersey v. T.L.O.*
      469 U.S. 325, 105 S. Ct. 733, 83 L. Ed. 2d 720 (1985) .............................. 7, 11, 16

21

22

*Nunez by Nunez v. City of San Diego*
      114 F.3d 935 ...................................................................................................... 14

23

24

*Paul v. Davis*
      424 U.S. 693, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976) ...................................... 13

25

26

*Poling v. Murphy*
      872 F.2d 757 (6th Cir. 1989) ........................................................................ 13, 19

27

28

iii

# TABLE OF AUTHORITIES
### (continued)

Page

*Robertson v. Dean Witter Reynolds, Inc.*
    749 F.2d 530 (9th Cir. 1984).................................................. 6

*Saucier v. Lucero*
    196 F.3d 1040 (9th Cir. 1999)............................................... 14

*Shinn v. College Station Ind. School Dist.*
    96 F.3d 783 (5th Cir. 1996)............................................. 9, 13

*Siegert v. Gilley*
    500 U.S. 226, 111 S. Ct. 1789, 114 L. Ed. 2d 277 (1991) .................... 16

*Spath v. National Collegiate Athletic Assoc.*
    728 F.2d 25 (1st Cir. 1984) ............................................... 14

*Thinket Ink Information Resources, Inc. v. Sun Microsystems, Inc.*
    368 F.3d 1053 (9th Cir. 2004)............................................. 22

*Tigrett v. Rector and Visitors of Univ. Virginia*
    290 F.3d 620 (4th Cir. 2002).............................................. 12

*Tinker v. Des Moines Ind. Comm. School Dist.*
    393 U.S. 503, 89 S. Ct. 733, 21 L. Ed. 2d 731 (1969) ...................... 10

*U.S. v. Classic*
    313 U.S. 299, 61 S. Ct. 1031, 85 L. Ed. 1368 (1941) ...................... 20

*Vieux v. East Bay Regional Park Dist.*
    906 F.2d 1330 (9th Cir. 1990)............................................. 18

*Whittlestone, Inc. v. Handi-Craft Co.*
    618 F.3d 970 (9th Cir. 2010)............................................. 21

*Wiemerslage v. Maine Township High School Dist. 207*
    29 F.3d 1149 (7th Cir. 1994).......................................... 10, 14

STATUTES

42 U.S.C. § 1983 ...................................................... passim

Cal. Code Civ. Proc. § 1021.5........................................... 21

Cal. Gov. Code § 6250. ................................................. 15

Cal. Penal Code § 632(a) . ............................................. 11

iv

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3

California Code of Regulations, Title 5, § 41301 .......................................................................... 4

4

California Code of Regulations, Title 5, § 41301(b)(7)....................................................... passim

5

**CONSTITUTIONAL PROVISIONS**

6

First Amendment.................................................................................... 9, 10, 14, 18

7

Fourteenth Amendment.................................................................................. 10, 13

8

Fourth Amendment ........................................................................................... 11

9

**COURT RULES**

10

Fed. R. Civ. P. 8(a)(2) ........................................................................................ 6

11

Fed. R. Civ. P. 12(b)(6)........................................................................................ 6

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Memo of Points and Authorities to Support Motion to Dismiss First Amended Complain

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff Neil O'Brien ("O'Brien"), a Fresno State University ("Fresno State") student, has sued university officials and faculty members based on a variety of alleged grievances that do not add up to a single constitutional violation.  O'Brien admits that he confronted two professors at their offices, insistently questioning them, videotaping them without their consent, and refusing to leave them alone until they called campus police.  (First Amended Complaint ["FAC"], ¶29(A)-(D).)  Fresno State then charged O'Brien with violating Title 5, Section 41301(b)(7) of the California Regulations, which provides that "[c]onduct that threatens or endangers the health or safety of any person within or related to the University community, including physical abuse, threats, intimidation, harassment, or sexual misconduct" is grounds for student discipline.  (*Id.,* ¶29(L); Appendix, Exh. "A.")  After a hearing, he was found to have violated six provisions of Section 41301.  (*Id.,* ¶29(R).)

O'Brien was not expelled, suspended, or precluded from attending any classes.  He was put on disciplinary probation.[1]  (*Id.,* ¶29(S).)  During probation, he was allegedly barred from applying to serve on student government or lead a student club.  (*Id.,* ¶29(T).)  In addition, his presence on the second floor of the Social Sciences building, and near its CLS faculty, was restricted unless he had prescheduled business there.  (*Id.,* ¶29(S).)  After he appeared there without warning to do an extra credit assignment, probation terms were allegedly clarified to state that he was to give the Dean 24 hours advance notice.  (*Id.,* ¶31 (A)-(F).)  Fresno State reasonably restricted his presence in that area, as two faculty members – and later a third – complained of his threatening conduct toward them.

---

[1] Plaintiff alleges that his probation was to end on May 12, 2012.  (*Id.,* ¶29(T).)  He does not allege that it continued beyond that date.

O'Brien claims that Fresno State was intolerant of his viewpoint, but his own allegations show that he was disciplined for threatening conduct, not for political speech.  O'Brien also complains that Fresno State was slow to respond to his Public Records Act requests, but does not show that any defendant was responsible for responding to them.  (*Id.,* ¶24.)

O'Brien's claims are based on 42 U.S.C. §1983 and the federal constitution, but he fails to show a constitutional violation.  Even if he did, qualified immunity bars his claims against all defendants because there was no clearly established constitutional right of which a reasonable official would have known.  He cannot allege a conspiracy because he does not show an unlawful objective or a civil rights violation.  In addition, Dr. Welty, Fresno's State's president, and Dr. Oliaro, the Dean of Students, are not liable for subordinates' torts.  Drs. Torres and Lopes did not act under color of state law when they allegedly called campus police and filed reports about O'Brien's conduct.  O'Brien also seeks damages pursuant to a private attorney general theory that does not apply to Section 1983 claims.

## II.    FACTS

### A.    Claims Against Dr. Torres and Dr. Lopes

O'Brien allegedly took offense to a poem published by a University newspaper and went to Dr. Torres' office, with a video camera running, to confront him about it.  (*Id.,* ¶¶28-29.)  Dr. Torres was faculty adviser to the newspaper.  (*Id.,* ¶5.)  O'Brien confronted Dr. Torres and Dr. Lopes, another Fresno State professor.  (*Id.,* ¶¶6; 29.)  When O'Brien refused to leave them alone, Drs. Torres and Lopes called campus police and filed complaints.  (*Id.,* ¶29(A)-(D).)  Although plaintiff admits to confronting the professors, refusing to leave when he was told to do so and videotaping them without their consent, he alleges their complaints were false.  (*Id.*)  The complaints, however, were that Drs. Torres and Lopes felt threatened by O'Brien.  (*Id.,* ¶29(C).

2

Drs. Torres and Lopes allegedly appeared as witnesses at O'Brien's disciplinary hearing.  (*Id.*, ¶29(Q).)  Their complaints were found credible by the hearing officer, who recommended discipline against O'Brien.  (*Id.*, ¶29(R).)  Drs. Torres and Lopes are named in the first, second and third causes of action.

**B.    Claims Against Dr. Coon**

O'Brien alleges that Dr. Coon was Fresno State's Student Conduct Administrator.  (*Id.*, ¶4.) She allegedly mailed a letter to O'Brien informing him that he was charged with threatening Drs. Torres and Lopes.  (*Id.*, ¶29(I).)  She required him to meet with her.  (*Id.*)  O'Brien responded to her by email and appeared for a conference on June 17, 2011, at which Dr. Coon informed him that she was going to recommend sanctions.  (*Id.*, ¶¶29(J)-(L).)  Dr. Coon allegedly sent O'Brien a proposed settlement agreement that required him to stay 100 feet away from the Chicano and Latino American Studies Department ("CLS") and its personnel, which O'Brien rejected. (*Id.*,¶29(L).)  Dr. Coon corresponded further with plaintiff and his counsel.  She allegedly sent him a letter informing him that a student disciplinary proceeding was being initiated against him for violating Title 5, Section 41301(b)(7) of the California Code of Regulations, and of the recommended sanctions.  (*Id.*, ¶29(M)-(O).)  Dr. Coon allegedly participated in plaintiff's September 13, 2011 disciplinary hearing.  (*Id.*, ¶29(Q).)  O'Brien refers to her as the "prosecutor."  (*Id.*, ¶29(Q).)  She is named in the first, fourth, fifth, sixth and seventh causes of action.

**C.    Claims Against Dr. Welty and Dr. Oliaro**

O'Brien alleges that Dr. Welty is the President of Fresno State University, and Dr. Oliaro is the Dean of Students and Vice President for the Division of Student Affairs.  (*Id.*, ¶¶2-3.)  Drs. Welty and Oliaro allegedly denied O'Brien's request to bring an attorney to his September 13,

3

2011 disciplinary hearing.  (*Id.,* ¶29(K) and (Q).)  A hearing officer, who is not a defendant, conducted a hearing but did not permit O'Brien to play videotapes or record the hearing.  (*Id.,* ¶29(Q).)  A police officer witness allegedly was in the building but apparently not called to testify because Dr. Coon and the hearing officer did not know he was there.  (*Id.*)  The hearing officer's report concluded that O'Brien had violated six provisions of California Regulations, Title 5 §41301, including subsection (b)(7), with which he had been charged.  (*Id.,* ¶29(R).)  Dr. Oliaro allegedly reviewed the report and then issued a decision on September 30, 2011.  (*Id;* ¶¶29(R) and 30.)  The decision allegedly increased the sanction recommended by Dr. Coon, placing O'Brien on disciplinary probation until May 20, 2012, and prohibiting him from being within 100 feet of CLS faculty or on the second floor of the Social Science building unless he had "prescheduled business, a class or an appointment . . . in that area."  (*Id.,* ¶29(S).)  During O'Brien's probation, Drs. Welty and Oliaro denied his request to apply to serve on student government and allegedly prohibited him from serving as president or treasurer of a political club he had formed.  (*Id.,* ¶¶29(T); 34.)

While on probation, O'Brien went to the Social Sciences building.  (*Id.,* ¶31.)  A disagreement with faculty ensued, and campus police were called.  (*Id.*, ¶31(A)-(E).)  On December 15, 2011, Dr. Oliaro allegedly sent a letter to O'Brien informing him that his presence in the Social Sciences building had caused confusion, and to avoid this in the future, he was to provide 24 hour prior notice to the Dean's office of any visit to the second floor of the Social Sciences building.  (*Id.,* ¶31(F).)  O'Brien enrolled in courses on the second floor of the Social Sciences building and ate his lunch there before class.  (*Id.,* ¶31(G).)  Dr. Oliaro allegedly emailed him that he could be there for scheduled classes, but otherwise was to maintain 100 feet of distance from the CLS faculty and staff.  (*Id.*)

4

O'Brien alleges that Drs. Welty and Oliaro "fomented" a campus atmosphere that was intolerant of his viewpoint. (*Id.,* ¶23.)  The only factual support he alleges for this conclusion is that Dr. Welty allegedly made statements in support of a student who was an illegal alien, and Drs. Welty and Oliaro lobbied for passage of the "Dream Act." (*Id.,* ¶22.)  He also alleges that Drs. Welty and Oliaro failed to train faculty to tolerate political speech with which they disagreed. (*Id.,* ¶45.)  Drs. Welty and Oliaro are named in all of plaintiff's 11 causes of action.

**D.     Claims Against Dr. Gonzalez**

Dr. Gonzalez is allegedly the Dean of Social Sciences at Fresno State. (*Id.,* ¶7.)  She allegedly attended O'Brien's September 13, 2011 disciplinary hearing, where she stated that Dr. Torres and Dr. Lopes reported their claims to her, and she believed that they felt threatened. (*Id.,* ¶29(Q).)  On December 1, 2011, after plaintiff received his probationary conditions, he went to the Social Science building to do an assigned extra credit project. (*Id.,* ¶31(A).)  Dr. Gonzalez told him that he was not to be there. (*Id.*)  Campus police were allegedly called (it is not clear by whom) and followed O'Brien as he did his assignment. (*Id.*)  O'Brien returned to the Social Science building with his video camera the next day, and Dr. Gonzalez allegedly asked someone to call campus police, because he was causing a disruption. (*Id.,* ¶31(B).)  After O'Brien's attorney arrived and supplied a copy of the probation order, campus police allegedly reviewed it and explained to O'Brien that the faculty members were not permitted to see it due to student privacy rights. (*Id.,* ¶31(C) – (E).))  Later, O'Brien attended classes in the Social Sciences building and ate his lunch there. (*Id.,* ¶31(G).)  Allegedly, Dr. Gonzalez then asked Dr. Oliaro to take "tough action" against plaintiff. (*Id.*)  O'Brien does not allege that his probation order permitted him to eat lunch there.  Dr. Gonzalez is named in the first, ninth and eleventh causes of action.

5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### E.    Claims Against Dr. Jendian

Dr. Jendian is allegedly a professor and chair of the Sociology department.  (*Id.,* ¶8.)  On December 2, 2011, when O'Brien was doing his extra credit project with his video camera in the Social Sciences building while on probation, Dr. Jendian allegedly confronted him.  (*Id.,* ¶31(B).)  When campus police arrived, Dr. Jendian allegedly told them that O'Brien "was accosting and threatening him, and that he feared for his safety[.]"  (*Id.*)  Dr. Jendian is named in the first and ninth causes of action.

### F.    Plaintiff's Damages Claims

Plaintiff alleges that he was humiliated and suffered emotional distress.  (*Id.*, ¶38.)  As compensation, he seeks an award equal to all tuition, expenses and fees he paid and/or debt he assumed to attend Fresno State, and punitive damages.  (*Id.,* ¶39-40.)

### III.   STANDARD FOR MOTION TO DISMISS

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to show "that the pleader is entitled to relief[.]"  Conclusions are "not entitled to be assumed true."  *Ashcroft v. Iqbal*, 556 U.S. 662, 681, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).  A court may dismiss a complaint pursuant to Fed. R. Civ. P. 12(b)(6) for either: 1) lack of a cognizable legal theory; or 2) the pleading of insufficient facts under a cognizable legal theory.  *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 534 (9th Cir. 1984).

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' . . . The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft,* 556 U.S. at 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (citation omitted).

6

## IV.   PLAINTIFF FAILS TO ALLEGE A CONSTITUTIONAL VIOLATION

### A.   Plaintiff Received Sufficient Due Process in his Disciplinary Proceedings

"[W]e have recognized that maintaining security and order in the schools requires a certain degree of flexibility in school disciplinary procedures . . ." *New Jersey v. T.L.O.,* 469 U.S. 325, 339-340, 105 S. Ct. 733, 83 L. Ed. 2d 720 (1985).[2]  In *Goss v. Lopez,* 419 U.S. 565, 579, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975), the Supreme Court concluded that students facing suspension were entitled to "some kind of notice and afforded some kind of hearing."[3]  *Goss* found:

> "We stop short of construing the Due Process Clause to require, countrywide, that hearings in connection with short suspensions must afford the student the opportunity to secure counsel, to confront and cross-examine witnesses supporting the charge, or to call his own witnesses to verify his version of the incident. . . . To impose in each such case even truncated trial-type procedures might well overwhelm administrative facilities in many places and, by diverting resources, cost more than it would save in educational effectiveness.  Moreover, further formalizing the suspension process and escalating its formality and adversary nature may not only make it too costly as a regular disciplinary tool but also destroy its effectiveness as part of the teaching process." *Id.* at 583, 95 S. Ct. 729, 42 L. Ed. 2d 725.

As stated above, O'Brien admits that lesser sanctions were at issue here.  He was not expelled, suspended, prohibited from taking any classes, or being on the second floor of the Social Sciences building if he had business and gave proper notice that he would be there.  Even if he had faced suspension, he received all of Goss' procedural protections.[4]  He received notice and a hearing.  (FAC, ¶29(I)-(Q).)

---

[2] Justice Powell's concurring opinion in *T.L.O.* noted that "the school has the obligation to protect pupils from mistreatment . . . and also to protect teachers themselves from violence . . ." *Id.* at 350, 105 S. Ct. 733, 83 L. Ed. 2d 720.

[3] The Court noted that "[s]tudents whose presence poses a continuing danger . . . or an ongoing threat of disrupting the academic process may be immediately removed . . ." with notice and a hearing to follow as soon as practicable.  *Id.* at 582-583, 95 S. Ct. 729, 42 L. Ed.2d 725.

[4] If O'Brien had been entitled to the full procedures of a trial (which clearly he was not) Drs. Lopes, Torres and Gonzalez would be entitled to witness immunity from Section 1983 claims (*Briscoe v. LaHue,* 460 U.S. 325, 345-346, 103 S. Ct. 1108, 75 L. Ed. 2d 96 (1983)), Dr. Coon would be entitled to prosecutorial immunity (*Butz v. Economou,* 438 U.S. 478, 515, 98 S.

(continued…)

7

In *Gorman v. University of Rhode Island*, 837 F.2d 7, 9 (1st Cir. 1988), a university student argued that disciplinary hearings violated his right to due process.  Gorman, a student government member, was involved in altercations with two university employees, and a hearing was held pursuant to the university manual.  *Id.* at 9-10.  A university board permanently banned him from holding student office and mandated a psychiatric exam, but Gorman failed to comply with the sanctions.  *Id.* at 10-11.  Charges were filed against him.  *Id.* at 11.  He made various requests, including to have legal counsel present and tape record the hearing.  *Id.*  His requests were denied, sanctions including suspension were imposed, and Gorman sued in federal court.  *Id.*  The First Circuit found that his disciplinary hearing afforded him sufficient due process.  *Id.* at 16-17.  A student hearing is "not to imply that a full-dress judicial hearing, with the right to cross-examine witnesses, is required."  *Id.* at 14 (citation omitted).

O'Brien, like Gorman, was given notice of the charges against him and an opportunity to be heard.  O'Brien's argument, like Gorman's, "rests on the premise that a university may not discipline its students without providing full-scale adversarial proceedings comparable to those afforded defendants in a criminal trial."  *Id.* at 14.  The courts reject this premise.

> "School administrators and courts recognize that 'procedural requirements entail the expenditure of limited resources, [and] that at some point the benefit to individuals from an additional safeguard is substantially outweighed by the cost of providing such protection . . .'" *Id.* at 15.  (citation omitted) (bracket in original).

*Gorman* also found that "the weight of authority is against representation by counsel at disciplinary hearings, unless the student is also facing criminal charges stemming from the

---

(…continued)
Ct. 2894, 57 L. Ed. 2d 895 (1978)), and Dr. Oliaro, who issued the resulting decision, would be entitled to arbitrator's immunity (*Ashelman v. Pope,* 793 F.2d 1072, 1075 (9th Cir. 1986).)  Moreover, O'Brien would be unable to state a Section 1983 claim against any defendant because the proceedings did not terminate in his favor.  *Heck v. Humphrey,* 512 U.S. 477, 484-486, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994).

incident in question." *Id.* at 16.  (citations omitted).  "As for the right to cross-examination,

suffice it to state that the right to unlimited cross-examination has not been deemed an essential

requirement of due process in school disciplinary cases." *Id.*  O'Brien admits that he was not

facing criminal charges.  (Complaint, ¶29(G).)  He cannot demonstrate a constitutional

deprivation based on his disciplinary proceedings.

### B.   O'Brien's First Amendment Rights were not Violated

#### 1.   The Discipline was Appropriate

In *Lavine v. Blaine School Dist.*, 257 F.3d 981, 983 (9th Cir. 2001), a high school student

sued a school district and officials when the district expelled him on an emergency basis after he

wrote a violent poem about student shootings and showed it to a teacher.[5]  The Ninth Circuit

found that "school officials acted . . . within constitutional limits[.]" *Id.* at 983.  "The school had

a duty to prevent any potential violence on campus . . ." and had "a reasonable basis for [its]

actions." *Id.* at 989.  It did not violate the student's First Amendment rights. *Id.* at 990.

"The undoubted freedom to advocate unpopular and controversial views in schools and

classrooms must be balanced against society's countervailing interest in teaching students the

boundaries of socially appropriate behavior." *Bethel School Dist. v. Fraser,* 478 U.S. 675, 681,

106 S. Ct. 3159, 92 L. Ed. 2d 549 (1986).  In *Bethel,* the Supreme Court upheld a school district's

discipline, including suspension, of a student who gave a lewd speech. *Id.* at 677-680, 106 S. Ct.

3159, 92 L. Ed. 2d 549.  "[A] constitutional violation does not occur every time someone feels

that they have been wronged or treated unfairly." *Shinn v. College Station Ind. School Dist.,* 96

F.3d 783, 786 (5th Cir. 1996) (citations omitted).  In *Shinn,* the court found that a student failed to

---

[5] The student was allowed to return to school after 17 days, when the school district
rescinded its expulsion. *Id.* at 986.

state a claim when he alleged that a band instructor's unprofessional conduct violated his First and Fourteenth Amendment rights. *Id.* at 785-786. *See also, Wiemerslage v. Maine Township High School Dist. 207,* 29 F.3d 1149, 1150-1152 (7th Cir. 1994), in which a suspended student argued that a school's anti-loitering policy, which prohibited him from congregating in a specific area on campus, violated his free speech and assembly rights. The court's finding that he failed to plead a claim was affirmed on appeal. *Id.* at 1152.

Here, O'Brien alleges that the sanctions that precluded him from loitering on the second floor of the Social Sciences building violated his rights to free speech and assembly. The sanctions did not preclude him from being there when he had academic business and gave advance notice of his presence. As O'Brien's conduct was found to be threatening to faculty members on the floor, the sanctions were reasonable and served an educational and practical purpose.

### 2.     The Discipline was not Retaliatory

"To establish a First Amendment retaliation claim in the student speech context, a plaintiff must show that (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *Corales v. Bennett,* 567 F.3d 554, 563 (9th Cir. 2009) (citation omitted).

O'Brien's own allegations show that he was disciplined for conduct threatening to others on campus, and not for the content of his speech. He violated a content neutral California regulation that furthers the compelling interests of preserving the safety and peace of persons on campus. He caused a disturbance in the Social Sciences building by videotaping professors without their permission, insistently questioning them and refusing to leave their offices. Such conduct interrupts school activities and intrudes upon school affairs, and is not protected by the First Amendment. *See Tinker v. Des Moines Ind. Comm. School Dist.,* 393 U.S. 503, 514, 89 S. Ct. 733, 21 L. Ed. 2d 731 (1969). O'Brien was disciplined for threatening, disruptive conduct,

10

not for exercising free expression.  *See Corales,* 567 F.3d at 565 (students were punished for leaving campus without permission, not for participating in an off campus protest).  Therefore, he does not meet the first prong of the *Corales* test.  Moreover, an independent hearing officer, not the defendants, found that O'Brien violated six provisions of Section 41301.

In addition, to videotape persons without their consent violates California Penal Code §632(a).  The prohibition extends to videotaping by participants in the communication.  *Frio v. Superior Court,* 203 Cal.App.3d 1480, 1488 (1988).  O'Brien's admitted conduct in videotaping professors in their offices despite their objections was, in itself, valid grounds for discipline. (FAC, ¶29(A), (B) and (O).)  It was not retaliatory.

### C.    O'Brien's December 1 and 2, 2011 Encounters with Faculty Did not Violate His Constitutional Rights

In *DeSyllas v. Bernstine,* 351 F.3d 934, 936-939 (9th Cir. 2003), a university student asserted constitutional violations after administrators questioned him in the presence of a campus police officer while they tried to find stolen student records believed to be in his possession.  The Ninth Circuit found that the plaintiff was not detained, but if he had been, "that detention was not unlawful if the [administrators'] conduct was reasonable in light of all the circumstances."  *Id.* at 940 (citation omitted).  *DeSyllas* administrators had a strong interest in recovering confidential records, and there was no Fourth Amendment violation.  *Id.* at 940-941.  *See also, T.L.O.,* 469 U.S. at 340, 105 S. Ct. 733, 83 L. Ed. 2d 720 (holding that school officials need not obtain a warrant before searching students).  "Against the [student's] interest in privacy must be set the substantial interest of teachers and administrators in maintaining discipline in the classroom and on school grounds."  *Id.* at 339.

Here, O'Brien admits that he went without warning to the second floor of the Social Sciences building while he was on probation.  This caused a disturbance, as he had been found to

11

have committed Section 41301 violations against two faculty members there.  O'Brien admits

that administrators stated that they believed that he was not to be there, and that he was told they

did not have a copy of his probation order.  Administrators had a compelling interest in insuring

the faculty's safety and to prevent disturbances inside an academic building during the school

day.  They would have been remiss not to challenge his presence.  Moreover, O'Brien's extra

credit project was not "prescheduled" as required by his probation order.  (Complaint, ¶29(S).)

O'Brien admits that he asked officers to wait for his attorney.  (*Id.,* ¶31(C).)  Campus police

reviewed O'Brien's sanctions order when it was provided to them.  He was not unreasonably

detained.

### D.   The Clarification of the Sanctions Order did not Violate O'Brien's Constitutional Rights

In *Tigrett v. Rector and Visitors of Univ. Virginia,* 290 F.3d 620, 625 (4th Cir. 2002),

students challenged their suspensions on constitutional grounds after their university's president

imposed more severe sanctions than a disciplinary panel had recommended.  The court rejected

the students' argument that they had the right to appear again before the ultimate decision maker

after their hearing with the panel.  *Id.* at 629.  "In the absence of a constitutional or statutory

deprivation, the federal courts should be loathe to interfere with the organization and operation of

an institution of higher education."  *Id.* at 629 (citation omitted).

Here, O'Brien alleges that Dr. Oliaro sent him a letter after the December 1 and 2, 2011

incidents, requiring him to give 24 hour advance notice to the Dean when he would be on the

second floor of the Social Sciences building.  This clarification was minor and practical.  The

probation order permitted O'Brien to go there when he had "prescheduled" business, and his

previous unannounced visit had caused a problem.  There was no constitutional violation.

12

1

**E.     Alleged Harm to Reputation is not a Basis for a 1983 Claim**

2

3        O'Brien alleges that defendants caused him "severe emotional distress" and "harm to his

4    reputation."  (FAC, ¶38.)  Harm to reputation is not a constitutional violation.  "The words

5    'liberty' and 'property' as used in the Fourteenth Amendment do not in terms single out

6    reputation as a candidate for special protection over and above other interests . . ."  *Paul v. Davis,*

7    424 U.S. 693, 701, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976).  Moreover, "[t]here is no

8    constitutional right to be free from emotional distress."  *Shinn,* 96 F.3d at 786.

9

10       **F.     O'Brien's Constitutional Rights were not Violated when he was Barred
              from Applying for Student Government Positions and Leading a Club**

11       O'Brien complains that while he was on probation, he was barred from applying for a

12   student government position, and from serving as president or treasurer of a club he had founded.

13   Such extracurricular activities are not a constitutional right.  In *Flint v. Dennison,* 488 F.3d 816,

14   820 (9th Cir. 2007), the Ninth Circuit found that a university could deny a student government

15   seat to a candidate who exceeded spending limits.   In *Poling v. Murphy,* 872 F.2d 757, 758-761

16   (6th Cir. 1989), a school disqualified the plaintiff from a student election after he made a

17   distasteful campaign speech at a school assembly.  The student's "disqualification did not, as we

18   see it, violate his due process rights under the Fourteenth Amendment."  *Id.* at 764.

19

20           "[T]he privilege of participating in interscholastic athletics is outside the
          protection of due process.  (citation.)  The privilege of participation in a student
21        council election seems no different."  *Id.*  (citation omitted.)

22

23       There is no "right or property interest in participation in student council[.]"  *Bull v.

24   Dardanelle Public School Dist.,* 745 F.Supp. 1455, 1461 (E.D. Ark. 1990).  In *Bull,* a student

25   alleged that he was prevented from running for student council in retaliation for his exercise of

26   his First Amendment rights.  *Id.* at 1459.  The court dismissed the complaint, finding that "the

27

28

13

actions of the teachers in not approving of plaintiff's candidacy were related to 'legitimate pedagogical concerns.'" *Id.* at 1460. (citation omitted). Other courts agree that student extracurriculars are not a constitutional right. For example, there is no "fundamental right to play intercollegiate ice hockey." *Spath v. National Collegiate Athletic Assoc.,* 728 F.2d 25, 28 (1st Cir. 1984).

**G.     There was no Unconstitutional Infringement on O'Brien's Right to Travel**

O'Brien alleges that his constitutional rights to travel were violated. Neither the Supreme Court nor the Ninth Circuit has recognized a protected right to *intra*state travel. *Nunez by Nunez v. City of San Diego,* 114 F.3d 935, 944, nt. 7 (9th Cir. 1997). O'Brien's campus strolls are not interstate travel.

> "[A] college has the inherent power to promulgate rules and regulations . . . it has the inherent power properly to discipline . . . it has power appropriately to protect itself and its property . . . it may expect that its students adhere to generally accepted standards of conduct." *Saucier v. Lucero,* 196 F.3d 1040, 1045 (9th Cir. 1999), (citation omitted).

In *Saucier,* the Ninth Circuit affirmed the district court's rejection of a Section 1983 action brought by an alumnus after a university excluded the alumnus from campus due to stalking complaints by students. *Id.* at 1041-1043.

> "Whatever right [plaintiff] has to be on campus must be balanced against the right of the University to exclude him. The University may preserve such tranquility as the facilities' central purpose requires." *Id.* at 1045. *See also, Wiemerslage,* 29 F.3d at 1150, 1152 (the court upheld the suspension of a student who violated a policy that prohibited students from congregating in a specific area on campus).

O'Brien admits that he was not precluded from going to the second floor of the Social Sciences building if he had business there and gave advance notice. This restriction was reasonable. According to his own allegations, three faculty members in that area had complained that O'Brien's behavior toward them was harassing or intimidating. Administrators had a strong

14

interest in keeping the peace in an academic building during the school day.  There was no infringement on O'Brien's constitutional right to travel.

### H.    There was no Constitutional Violation with O'Brien's Public Records Act Requests

O'Brien complains that Fresno State was slow to respond to multiple Public Records Act requests he made pursuant to California law.  *See* Cal. Gov. Code §6250, *et seq.*  He does not plead that a Public Records Act violation occurred.  Even if he had, "[a]s a general rule, a violation of state law does not lead to liability under §1983."  *Campbell v. Burt,* 141 F.3d 927, 930 (9th Cir. 1998) (citations omitted).  O'Brien also has not and cannot show that any defendant was responsible for responding to his Public Records Act requests.  Section 1983 liability requires a clear showing of causation.  *See Martinez v. State of California,* 444 U.S. 277, 283-285, 100 S. Ct. 553, 62 L. Ed. 2d 481 (1980).  O'Brien cannot base a Section 1983 claim against any defendant on his alleged Public Records Act requests.

### I.    There was no Selective Enforcement

O'Brien alleges that other students who protested rising tuition costs were not disciplined. (FAC, ¶36.)  To invoke the Equal Protection Clause and plead selective enforcement, he must show that "persons similarly situated [were not] treated alike."  *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985).  *See also, Braswell v. Bd. of Regents,* 369 F.Supp.2d 1371, 1380 (N.D. Georgia 2005) (a campus football coach is not a "proper comparator" to a campus cheerleading coordinator).  A group protest over rising tuition costs is not similar to complaints that a student's conduct threatened other persons on campus.  To compare the two matters would deny Fresno State the flexibility in handling student disciplinary

15

matters to which the Supreme Court has found it is entitled.  *T.L.O.,* 469 U.S. at 340, 105 S. Ct. 733, 83 L. Ed. 2d 720.

## V.    QUALIFIED IMMUNITY DEFEATS CLAIMS AGAINST ALL DEFENDANTS

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982) (citations omitted).  "The purpose underlying qualified immunity is to allow government officials to carry out their duties without the fear of personal liability or harassing litigation."  *Braswell,* 369 F.Supp.2d at 1377 (citation omitted).  In *Braswell,* university officials who fired a cheerleading coordinator had qualified immunity from claims that they violated her free speech rights.  *Id.* at 1379-1380.  *See also, Hill v. Clovis,* 2012 WL 787609, *4-5 (E.D.Cal. 2012).

> "The entitlement is an ***immunity from suit*** rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."  *Siegert v. Gilley,* 500 U.S. 226, 233, 111 S. Ct. 1789, 114 L. Ed. 2d 277 (1991) (emphasis in original) (citation omitted).

> "[U]ntil this ***threshold*** immunity question is resolved, discovery should not be allowed."  Id.  at 232, 111 S. Ct. 1789, 114 L. Ed. 2d 277 (emphasis in original) (citation omitted).

> "Determining whether officials are owed qualified immunity involves two inquiries: 1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right; and 2) if so, whether the right was clearly established in light of the specific context of the case."  *Krainski v. Nevada ex rel. Board of Regents,* 616 F.3d 963, 968 (9th Cir. 2010) (citation omitted).

In *Krainski,* the plaintiff alleged that university officials placed a disciplinary notation on her record, in violation of her constitutional rights.  *Id.* at 970.  She alleged that she was wrongfully arrested and disciplined when school employees and her roommate falsely reported

16

that she had attacked the roommate.  *Id.* at 966-967.  The Ninth Circuit upheld the dismissal of her claims against university employees.  *Id.* at 968-971.  "[W]e are compelled to conclude that the contours of the right Krainski asserts were not sufficiently clear that a reasonable official would understand that what he or she is doing violates that right."  *Id.* at 970.  The court also found that qualified immunity protected school officials from Krainski's claims that the school's disciplinary hearing violated her due process rights.  *Id.* at 970-971.

Like Krainski, O'Brien claims that the charges against him were wrongful.  As shown above, O'Brien cannot show the violation of any constitutional right, let alone a "clearly established" one.  Drs. Torres and Lopes reported O'Brien after he admittedly pursued them in their offices, insistently questioning them, videotaping them without their permission, and refusing to leave them alone.  A hearing officer found that it was reasonable for them to have felt threatened by O'Brien's conduct.  Because Title 5, Section 41301(b)(7) of the California Regulations prohibits threatening conduct among the campus community, it is not a constitutional violation to report the conduct that caused them to feel threatened.  The regulation serves a compelling safety interest.  Members of a campus community must feel free to summon law enforcement when they perceive a threat.  Drs. Welty, Oliaro and Coon met and exceeded the law's requirements, providing O'Brien with notice of the charges against him and holding a hearing.  Then, in light of the restrictions on O'Brien's presence in the Social Sciences building, it was reasonable for Dr. Gonzalez and Dr. Jendian to believe he was violating his probation when he suddenly appeared there, and for Dr. Gonzalez to conclude it was a violation for O'Brien to eat his lunch there.  O'Brien admits that campus police told him that faculty did not have a copy of his probation order.  In the 65 page FAC, O'Brien alleges no conduct by any defendant that is a clearly established constitutional violation a reasonable person would have known.

17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Even if O'Brien's conduct (which clearly impinged on the rights of others) were to be construed as speech, qualified immunity would apply.  Permissible student speech is not a clearly defined area of law.  In *Morse v. Frederick,* 551 U.S. 393, 403, 410-448, 127 S. Ct. 2618, 168 L. Ed. 2d 290 (2007), a fractured Supreme Court ruled, with multiple concurring opinions and dissents, that the unfurling of a banner that arguably promoted drug use at a school event was not protected by the First Amendment.  The unsettled state of this law prompted Justice Thomas to find in his concurring opinion, "I am afraid that our jurisprudence now says that students have a right to speak in schools except when they do not – a standard continuously developed through litigation . . ."  *Id.* at 418, 127 S. Ct. 2618, 168 L. Ed. 2d 290.  No clear Supreme Court precedent holds that O'Brien's conduct -- which a hearing officer found was reasonably construed as threatening – constitutes protected speech.  Therefore, all defendants have qualified immunity from liability for their alleged response to it.

## VI.   O'BRIEN CANNOT PLEAD A CONSPIRACY

"A civil conspiracy is a combination 'of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage.'"  *Vieux v. East Bay Regional Park Dist.,* 906 F.2d 1330, 1343 (9th Cir. 1990) (citation omitted).  A claim for conspiracy to violate civil rights should be dismissed when the alleged conduct did not violate the plaintiff's civil rights.  *DeGrassi v. City of Glendora,* 207 F.3d 643, 647-48 (9th Cir. 2000).  As shown above, O'Brien cannot plead a civil rights violation as a matter of law.  Moreover, there was no "unlawful purpose" to his discipline, which served to educate him, deter harassment of the faculty, and prevent disturbances in an academic building during the school day.  Therefore, he cannot plead that anyone conspired to violate his civil rights.  His first cause of action should be dismissed as to all defendants.

1

## VII.  DRS. WELTY AND OLIARO ARE NOT LIABLE FOR SUBORDINATES' ALLEGED ACTIONS

2

3        "Under Section 1983, supervisory officials are not liable for actions of
subordinates on any theory of vicarious liability.  (citation).  A supervisor may be
liable if there exists either: 1) his or her personal involvement in the constitutional
4        deprivation, or 2) a sufficient causal connection between the supervisor's wrongful
conduct and the constitutional violation." *Hansen v. Black,* 885 F.2d 642, 645-646
5        (9th Cir. 1989) (citations omitted).

6        "Supervisory liability is imposed against a supervisory official in his
individual capacity for his own culpable action or inaction in the training,
7        supervision, or control of his subordinates, for his acquiescence in the constitutional
deprivations of which the complaint is made, or for conduct that showed a reckless or
8        callous indifference to the rights of others. (citations.)  In a section 1983 claim, 'a
supervisor is liable for the acts of his subordinates if the supervisor participated in or
9        directed the violations, or knew of the violations of subordinates, and failed to act to
prevent them.'"  *Corales,* 567 F.3d at 570 (citations omitted.)

10

11       Drs. Welty and Oliaro are named as defendants in all of O'Brien's 11 causes of action.

12       O'Brien alleges that Dr. Welty's rules precluded him from having counsel at his disciplinary

13       hearing, and from subpoenaing witnesses.  O'Brien's counsel allegedly sent emails to Dr. Welty,

14       and Dr. Welty designated Dr. Oliaro to decide O'Brien's sanctions.  Dr. Welty allegedly

15       precluded O'Brien from serving on student government or leading a club while O'Brien was on

16

17       probation.  As discussed above, none of this presents a constitutional violation. *Goss,* 419 U.S. at

18       579, 95 S. Ct. 729, 42 L. Ed. 2d 725; *Lavine,* 257 F.3d at 983; *Poling,* 872 F.2d at 758-761, 764.

19       Even if it did, Drs. Welty and Oliaro would have qualified immunity. *Krainski,* 616 F.3d at 968.

20       O'Brien claims that Dr. Welty condoned hostility against him, but the only facts alleged to

21       support this are that: 1) Dr. Welty allegedly made statements in support of a student who was an

22       illegal alien, and lobbied for passage of the "Dream Act;" and 2) a group of students who

23       protested rising tuition costs allegedly were not punished.  (FAC, ¶¶22; 36.)  This does not show a

24       sufficient causal connection to O'Brien's disciplinary process. *See Martinez,* 444 U.S. at 285,

25       100 S. Ct. 553, 62 L. Ed. 2d 481.  O'Brien's conclusions about Dr. Welty are not entitled to be

26

27       assumed true. *Ashcroft,* 556 U.S. at 681, 129 S. Ct. 1937, 173 L. Ed. 2d 868.  O'Brien also

28

19

claims that Dr. Welty failed to train faculty to tolerate political speech with which they disagreed. (FAC, ¶45.)  As shown above, however, O'Brien was charged with violating a California Regulation that prohibited conduct that was threatening toward others on campus, not for political speech.  In this era of mass violence, training faculty to refrain from calling for help in response to threatening conduct could subject those on campus to physical harm.  The second, third, ninth, tenth and eleventh causes of action should be dismissed as to Dr. Welty due to his lack of supervisory liability.

Similarly, Dr. Oliaro is not alleged to have participated in the incident that led to O'Brien's disciplinary hearing, or the December 1 and 2, 2011 encounters with faculty.  The second, third and ninth causes of action should be dismissed as to Dr. Oliaro.

**VIII. DRS. TORRES AND LOPES DID NOT ACT UNDER COLOR OF STATE LAW**

"Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." *U.S. v. Classic*, 313 U.S. 299, 326, 61 S. Ct. 1031, 85 L. Ed. 1368 (1941) (citations omitted). "Conversely, state officials or employees who act without the cloth of state authority do not subject themselves to §1983 suits." *Hughes v. Meyer,* 880 F.2d 967, 971 (7th Cir. 1989).  In *Hughes,* a conservation warden called his employer and the sheriff when two armed brothers accused him of trespassing on their land.  *Id.* at 968.  The warden then described the encounter to deputy sheriffs, who arrested one brother for false imprisonment and the other for aiding and abetting.  *Id.* at 969.  The district attorney declined to prosecute.  *Id.*  The brothers then filed a Section 1983 action, but the court found that the warden's conduct "was functionally equivalent to that of any private citizen reporting to the police the details of an alleged criminal act."  *Id.* at 968, 972.  Because the warden did not act "under color of law," Section 1983 claims against him were dismissed.  *Id.*

20

Here, O'Brien admits that he confronted Drs. Torres and Lopes at their offices about a publication that offended him.  He also admits that he videotaped them without permission, questioned them, "insisted on" speaking, and refused to leave when they made it clear they wanted to be left alone.  When O'Brien refused to leave, Drs. Torres and Lopes called campus police.  Any person on campus would have called police in response to such harassment.  O'Brien was later charged with violating Title 5, Section 41301(b)(7) of the California Regulations.  Subsection (b)7 prohibits "conduct that threatens or endangers the health or safety *of any person within or related to the University community* . . ."  (emphasis added).  After a hearing, O'Brien was found to have violated Subsection (b)7 and five other provisions of Section 41301.  He was not charged with belligerence to a faculty member, but with threatening or endangering the health or safety of persons within the University community.  According to O'Brien's own allegations, Drs. Torres and Lopes conducted themselves as persons who felt threatened by him.  They did not act within color of state law when they called police, filed reports, and made statements at O'Brien's disciplinary hearing.[6]  All claims against them should be dismissed.

## IX.   O'BRIEN 'S CLAIMS FOR PRIVATE ATTORNEY GENERAL DAMAGES FAIL[7]

O'Brien seeks damages pursuant to Cal. Code Civ. Proc. §1021.5.  (FAC, ¶¶53; 58; 63; 68; 73; 78; 83; 89; 94; 99; 108; prayer for relief, ¶E.)  As shown above, a Section 1983 claim may not generally be based on state law.  *Campbell,* 141 F.3d at 930.  Federal law does not authorize these damages for Section 1983 claims.  They must be dismissed.

---

[6] As set forth above, if Drs. Torres and Lopes acted under color of law, qualified immunity precludes liability, and in any event, there was no constitutional violation.

[7] Defendants move to dismiss rather than strike this claim.  *Whittlestone, Inc. v. Handi-Craft Co.,* 618 F.3d 970, 974 (9th Cir. 2010).

## X.  LEAVE TO AMEND SHOULD BE DENIED

"[A] district court does not err in denying leave to amend where the amendment would be futile." *Thinket Ink Information Resources, Inc. v. Sun Microsystems, Inc.* 368 F.3d 1053, 1061 (9th Cir. 2004) (citation omitted).  As shown above, the FAC's defects cannot be cured. Therefore, leave to file a futile amendment should be denied and all of O'Brien's claims should be dismissed without leave to amend.

## XI.  CONCLUSION

The courts enable universities to manage their own campus discipline, absent constitutional violations.  O'Brien alleges no constitutional violation and even if he had, qualified immunity bars this action against all defendants.  In addition, Drs. Welty and Oliaro have no supervisory liability and Drs. Torres and Lopes did not act under color of state law.  O'Brien also fails to plead a conspiracy and cannot assert a private attorney general damages theory.  All claims against all defendants should be dismissed without leave to amend.


Dated:  January 25, 2013                          Respectfully Submitted,

                                                  KAMALA D. HARRIS
                                                  Attorney General of California
                                                  JOEL A. DAVIS
                                                  Supervising Deputy Attorney General



                                                  /s/ Molly S. Murphy
                                                  MOLLY S. MURPHY
                                                  Deputy Attorney General
                                                  *Attorneys for Defendants Dr. John Welty,*
                                                  *Dr. Paul Oliaro, Dr. Carolyn Coon, Dr.*
                                                  *Victor Torres, Dr. Maria Lopes, Dr. Luz*
                                                  *Gonzalez and Dr. Matthew Jendian*

22

# CERTIFICATE OF SERVICE

Case Name:   **Neil O'Brien v. Dr. John Welty,**          No.          **1:12-cv-02017-AWI-DLB**
                     **et al.**

I hereby certify that on <u>January 25, 2013</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>January 25, 2013</u>, at Los Angeles, California.

|                          |                          |
|:------------------------:|:------------------------:|
| Sue Ng                   | /s/ Sue Ng               |
| Declarant                | Signature                |